[956 NYS2d 54]

ALEXANDRA GOMEZ-JIMENEZ et al., Appellants, v NEW YORK LAW SCHOOL, Respondent, et al., Defendants.

First Department, December 20, 2012

### APPEARANCES OF COUNSEL

*Strauss Law, PLLC*, New York City (*Jesse Strauss* of counsel), *David Anziska*, New York City, and *Frank Raimond*, New York City, for appellants.

*Venable LLP*, New York City (*Michael J. Volpe, Edmund M. O'Toole* and *Michael C. Hartmere* of counsel), for respondent.

### OPINION OF THE COURT

ACOSTA, J.

This appeal involves the propriety of the disclosures of postgraduate employment and salary data by defendant New York Law School to prospective students during the period August 11, 2005 to the present. Plaintiffs allege that the disclosures caused them to enroll in school to obtain, at a very high price, a law degree that proved less valuable in the marketplace than they were led to expect. We hold that defendant's disclosures, though unquestionably incomplete, were not false or misleading. We thus affirm the dismissal of the complaint.

Plaintiffs are graduates of the law school who attended the school between 2004 and 2011. They assert, individually and on behalf of all others similarly situated, a claim for deceptive acts and practices in violation of General Business Law § 349 and

claims for common-law fraud and negligent misrepresentation. These claims are based on allegations that the employment and salary information published by defendant during the relevant time period concealed, or failed to disclose, that the employment data included temporary and part-time positions and that the reported mean salaries were calculated based on the salary information submitted by a deliberately small, specifically selected, subset of graduates. In addition, plaintiffs allege that defendant enhanced its numbers by, among other things, hiring unemployed graduates as short-term research assistants so that they could be classified as employed. Plaintiffs assert that defendant engaged in this fraud to increase its class size and use the high tuition demanded of its students to lavish perks and exorbitant salaries on its administration and large faculty. The complaint seeks damages and equitable relief, including the refund and reimbursement of plaintiffs' tuition.

Defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), arguing, among other things, that its employment reports were not materially misleading because they (1) complied with the then applicable disclosure rules of the American Bar Association (ABA); (2) made no representation or implication that they included only full-time, permanent employment that required or preferred a law degree; and (3) explicitly revealed that the reported salary ranges were based on a small sample of graduates.

Supreme Court granted the motion to dismiss the complaint. With respect to the General Business Law § 349 claim, the court first rejected defendant's argument that it had a complete defense pursuant to General Business Law § 349 (d) because, although the regulations with which it complied were written by the United States Department of Education, the interpreting party, the Council of the Section of Legal Education and Admissions to the Bar of the ABA, is not an "official department, division, commission or agency of the United States." The court then found that defendant's postgraduate employment statistics were not misleading in a material way and that the salary data was not misleading because the school disclosed the sample size upon which the data was based. The court further found that the General Business Law § 349 claim failed to identify the actual injury sustained by each plaintiff as a result of the allegedly misleading statements. With respect to the fraud claim, the court found that defendant had no duty to clarify its marketing materials. Further, while the court rejected defendant's argu-

ment that plaintiffs failed to plead reliance on the alleged misrepresentations, it found any reliance unreasonable as a matter of law. With respect to the claim for negligent misrepresentation, the court again found that any reliance would have been unreasonable. This appeal followed.

When considering a motion to dismiss pursuant to CPLR 3211 (a) (7), "the court must accept the facts as alleged in the complaint as true and accord the plaintiff the benefit of every possible favorable inference, and must determine whether the facts as alleged fit within any cognizable legal theory" (*Phillips v City of New York*, 66 AD3d 170, 174 [1st Dept 2009] [internal quotation marks omitted]; *see also* CPLR 3026). Pursuant to CPLR 3211 (a) (1), dismissal may be "granted only where the documentary evidence [tendered by defendant] utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]).

We begin our analysis by first considering plaintiffs' General Business Law § 349 claim. To state a cause of action under that statute, a plaintiff

> "must, at the threshold, charge conduct that is consumer oriented. The conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large; '[p]rivate contract disputes unique to the parties . . . would not fall within the ambit of [General Business Law § 349]' " (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 320 [1995], quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25 [1995]).

"If a plaintiff meets this threshold, its prima facie case may then be established by proving that defendant is engaging in an act or practice that is deceptive in a material way and that plaintiff has been injured by it" (*id.*). Whether a representation or omission is a "deceptive act or practice" depends on the likelihood that it will "mislead a reasonable consumer acting reasonably under the circumstances" (*Oswego*, 85 NY2d at 26). "In the case of omissions in particular . . . [General Business Law § 349] surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation" (*id.*). However, "[o]mission-based claims under Section 349 are appropriate 'where the business alone possesses material informa-

tion that is relevant to the consumer and fails to provide this information' " (*Bildstein v MasterCard Intl., Inc.*, 2005 WL 1324972, *4, 2005 US Dist LEXIS 10763, *10-11 [SD NY 2005], quoting *Oswego*, 85 NY2d at 26).

[1] Here, the challenged practice was consumer-oriented insofar as it was part and parcel of defendant's efforts to sell its services as a law school to prospective students (*see Chais v Technical Career Insts.*, 2002 NY Slip Op 30082[U], *11-12 [Sup Ct, NY County 2002]). Nevertheless, although there is no question that the type of employment information published by defendant (and other law schools) during the relevant period likely left some consumers with an incomplete, if not false, impression of the school's job placement success, Supreme Court correctly held that this statistical gamesmanship, which the ABA has since repudiated in its revised disclosure guidelines,[1] does not give rise to a cognizable claim under General Business Law § 349. First, with respect to the employment data, defendant made no express representations as to whether the work was full-time or part-time. Second, with respect to the salary data, defendant disclosed that the representations were based on small samples of self-reporting graduates. While we are troubled by the unquestionably less than candid and incomplete nature of defendant's disclosures, a party does not violate General Business Law § 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information (*see Andre Strishak & Assoc. v Hewlett Packard Co.*, 300 AD2d 608, 609-610 [2d Dept 2002]; *St. Patrick's Home for Aged & Infirm v Laticrete Intl.*, 264 AD2d 652, 655-656 [1st Dept 1999]; *see also Corcino v Filstein*, 32 AD3d 201, 202 [1st Dept 2006]). Accordingly, we find that defendant's disclosures were not materially deceptive or misleading (*id.*). Because plaintiffs have not adequately pleaded that defendant's practice was misleading, we need not consider whether plaintiffs have alleged cognizable injuries. We also decline to consider defendant's argument that General Business Law § 349 (d) provides a complete defense.

We next address plaintiffs' fraud and negligent misrepresentation claims. To state a cause of action for fraudulent misrep-

---

1. *See* ABA, Memorandum to Law School Deans and Career Services Officers, Reporting Placement Data on Annual Questionnaire [July, 27, 2011], available at http://www.americanbar.org/content/dam/aba/administrative/ legal_education_and_admissions_to_the_bar/council_reports_and_resolutions/ 2011_questionnaire_memo_deans_career_services_officers.authcheckdam.pdf).

resentation, "a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178 [2011] [internal quotation marks omitted]). "A cause of action for fraudulent concealment requires, in addition to the four foregoing elements, an allegation that the defendant had a duty to disclose material information and that it failed to do so" (*P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 376 [1st Dept 2003]). "In addition, in any action based upon fraud, the circumstances constituting the wrong shall be stated in detail" (*id.* [internal quotation marks omitted], citing CPLR 3016 [b]). To state a cause of action for negligent misrepresentation, in turn, the plaintiff must allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information" (*Mandarin Trading*, 16 NY3d at 180 [internal quotation marks omitted]).

█ Plaintiffs argue that they stated causes of action for common law fraud and negligent misrepresentation based on their allegations that defendant knowingly published misrepresentations about its graduates' employment rates and salaries, and fraudulently concealed the fact that the employment rates included temporary, part-time, voluntary or non-JD-required/preferred employment. However, as previously discussed, the employment and salary data disclosed by defendant was not actually false (even if it was incomplete). Thus, the fraud claim fails insofar as it is based on fraudulent misrepresentations (*see Pappas v Harrow Stores*, 140 AD2d 501, 504 [2d Dept 1988]; *see also MacDonald v Thomas M. Cooley Law Sch.*, 880 F Supp 2d 785, 794 [WD Mich 2012] [dismissing a lawsuit against a law school on the grounds that plaintiff's "subjective misunderstanding of information that is not objectively false or misleading cannot mean that (defendant) has committed the tort of (fraud)"]). Furthermore, because plaintiffs have not alleged any special relationship or fiduciary obligation requiring a duty of full and complete disclosure from defendant to its prospective students, we dismiss plaintiff's claim to the extent that it is based on fraudulent concealment (*see Dembeck v 220 Cent. Park*

*S., LLC*, 33 AD3d 491, 492 [1st Dept 2006] ["A fiduciary relationship does not exist between parties engaged in an arm's length business transaction"]; *Jana L. v West 129th St. Realty Corp.*, 22 AD3d 274, 277-279 [1st Dept 2005]), and negligent misrepresentation (*see US Express Leasing, Inc. v Elite Tech. [NY], Inc.*, 87 AD3d 494, 497 [1st Dept 2011]; *United Safety of Am. v Consolidated Edison Co. of N.Y.*, 213 AD2d 283, 285-286 [1st Dept 1995]).

We are not unsympathetic to plaintiffs' concerns. We recognize that students may be susceptible to misrepresentations by law schools. As such, "[t]his Court does not necessarily agree [with Supreme Court] that [all] college graduates are particularly sophisticated in making career or business decisions" (*MacDonald*, 880 F Supp 2d at 797). As a result, prospective students can make decisions to yoke themselves and their spouses and/or their children to a crushing burden of student loan debt, sometimes because the schools have made less than complete representations giving the impression that a full-time job is easily obtainable, when, in fact, it is not.

Given this reality, it is important to remember that the practice of law is a noble profession that takes pride in its high ethical standards. Indeed, in order to join and continue to enjoy the privilege of being an active member of the legal profession, every prospective and active member of the profession is called upon to demonstrate candor and honesty in their practice. This requirement is not a trivial one. For the profession to continue to ensure that its members remain candid and honest public servants, all segments of the profession must work in concert to instill the importance of those values. "In the last analysis, the law is what the lawyers are. And the law and lawyers are what the law schools make them."[2] Defendant and its peers owe prospective students more than just barebones compliance with their legal obligations. Defendant and its peers are educational not-for-profit institutions.[3] They should be dedicated to advanc-

---

**2.** Felix Frankfurter, Professor, Harvard Law School, Letter to Mr. Rosenwald, May 13, 1927, at 3 (Felix Frankfurter papers, Harvard Law School library), quoted in Rand Jack & Dana C. Jack, Moral Vision and Professional Decisions: The Changing Values of Women and Men Lawyers 156 (1989).

**3.** *See* New York Department of State, Division of Corporations, State Records & UCC, Corporation & Business Entity Database, New York Law School, http://www.dos.ny.gov/corps/bus_entity_search.html (input "New York Law School" in business entity name field, then follow associated hyperlink).

ing the public welfare.[4] In that vein, defendant and its peers have at least an ethical obligation of absolute candor to their prospective students.

Accordingly, the order of the Supreme Court, New York County (Melvin L. Schweitzer, J.), entered March 21, 2012, which granted defendant New York Law School's motion to dismiss the complaint, should be affirmed, without costs.

FRIEDMAN, J.P., ABDUS-SALAAM, MANZANET-DANIELS and ROMÁN, JJ., concur.

Order, Supreme Court, New York County, entered March 21, 2012, affirmed, without costs.

---

**4.** *See* E. Lisk Wyckoff, Jr., Practice Commentaries, McKinney's Cons Laws of NY, Book 37, Not-For-Profit Corporation Law § 201 ("This type of corporation is established primarily to benefit society in general as opposed to the members of a not-for-profit corporation").