# Illinois Official Reports

## Appellate Court

*Phillips v. DePaul University*, 2014 IL App (1st) 122817

| | |
|---|---|
| Appellate Court Caption | JONATHAN PHILLIPS, BRIAN LOKER, ADAM SMESTAD, XAVIER HAILEY, BRENT DAVIDSON, SHELLYE TAYLOR, ALLISON LEARY, JAIMIE WALSH, MADISON MULLADY, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants, v. DePAUL UNIVERSITY, a/k/a DePaul University College of Law, and DOES 1-20, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2817 |
| Filed | September 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a class action by graduates of defendant law school who became licensed attorneys but had difficulty obtaining full-time, legal employment with salaries high enough to allow them to service their student loans, the appellate court affirmed the trial court's dismissal of their complaint alleging that defendant violated the Consumer Fraud and Deceptive Business Practices Act and committed common-law fraud and negligent misrepresentation by publishing employment and salary statistics that deceptively overstated the percentages of graduates who obtained full-time legal employment earning more than $70,000 and that plaintiffs relied on that information when deciding to enroll and remain enrolled in defendant school and graduated with juris doctorate degrees with job prospects that were less than what defendant claimed they would be, since plaintiffs did not adequately allege that defendant made any incomplete, false, deceptive, or misleading statements with respect to the employment information it provided regarding its graduates' employment and salaries for the years alleged, and, furthermore, plaintiffs did not adequately allege reasonable reliance, proximate cause, or damages. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-003523; the Hon. Neil Cohen, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Clinton Law Firm, of Chicago (Edward X. Clinton, Jr., and Edward X. Clinton, Sr., of counsel), for appellants. |
| | Jones Day (Lawrence C. DiNardo and Tina M. Tabacchi, of counsel), and Varga Berger Ledsky Hayes & Casey (Norman B. Berger and Michael D. Hayes, of counsel), both of Chicago, for appellees. |

| | |
|---|---|
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Justices Hall and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs, Jonathan Phillips, Brian Loker, Adam Smestad, Xavier Hailey, Brent Davidson, Shellye Taylor, Allison Leary, Jaime Walsh, and Madison Mullady, graduated from DePaul University College of Law (DePaul) between 2007 and 2011 and are licensed attorneys, but they have had difficulty finding full-time, legal employment that pays a high enough salary so as to allow them to pay off their student loans. On April 6, 2012, plaintiffs filed a first-amended class action complaint against DePaul on behalf of themselves and all others similarly situated, alleging that DePaul violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2012)) and committed common-law fraud and negligent misrepresentation by publishing employment and salary statistics that deceptively overstated the percentages of recent graduates who had obtained full-time legal employment with salaries in excess of $70,000. Plaintiffs alleged they relied upon these employment and salary statistics when deciding to enroll and remain enrolled at DePaul, and that as a consequence of such reliance, they "paid tens of thousands of dollars for the required tuition, and in some cases took out tuition loans that will burden them for years." Also as a consequence of such reliance, they "graduated with a J.D. degree from DePaul with near-term and lifetime job prospects that are, statistically, less than they would have been had they obtained a degree from a DePaul with the employment numbers DePaul claimed to have." Plaintiffs sought to recover as damages a percentage of their tuition payments as well as the additional lifetime income they would have earned had they obtained the employment and salaries they expected based on the employment and salary statistics reported by DePaul. DePaul filed a combined motion to dismiss (735 ILCS 5/2-615, 2-619 (West 2012)), which the

circuit court granted with prejudice. Plaintiffs appeal.[1] We affirm.

¶ 2                                    I. Background Facts
¶ 3                    A. Allegations Regarding the Individual Plaintiffs
¶ 4        In their first-amended class action complaint, the following allegations were made regarding the individual plaintiffs:

¶ 5        Jonathan Phillips and Xavier Hailey enrolled in DePaul in August 2007, graduated with *juris doctorate* (J.D.) degrees in May 2010, and were admitted to the Illinois bar on November 4, 2010. Brent Davidson enrolled in DePaul in August 2006, graduated with a J.D. degree in May 2009, and was admitted to the Illinois bar in November 2009. Shellye Taylor enrolled in DePaul in August 2006, graduated with a J.D. degree in May 2010, and was admitted to the Illinois bar on November 4, 2010. Allison Leary enrolled in DePaul in August 2007, graduated with a J.D. degree in May 2011, and was admitted to the Illinois bar on November 4, 2011. Adam Smestad enrolled in DePaul in August 2007, graduated with a J.D. degree in December 2009, and was admitted to the Illinois bar on November 4, 2010. Jaime Walsh enrolled in DePaul in September 2003, graduated with a J.D. degree in May 2007, and was admitted to the Illinois bar in November 2007. Madison Mullady enrolled in DePaul in August 2008, graduated with a J.D. degree in May 2011, and was admitted to the Illinois bar in November 2011. Brian Loker enrolled in DePaul in August 2007, graduated with a J.D. degree in December 2009, and was admitted to the California bar in June 2010.

¶ 6        Plaintiffs alleged each of them took out student loans ranging from $77,000 to more than $300,000 to pay for the cost of attending DePaul. Upon graduation, none of them have found full-time, legal work that pays a salary sufficient to service their student loan debts. The only salary actually pleaded was for Jaime Walsh, who makes $40,000 per year.

¶ 7                          B. Allegations Regarding DePaul
¶ 8        In their first-amended class action complaint, plaintiffs alleged that DePaul is a law school accredited by the American Bar Association (ABA). Section 509(a) of the ABA's Standards for Approval of Law Schools provides that an accredited law school must "publish basic consumer information" in a "fair and accurate manner reflective of actual practice." Pursuant thereto, DePaul annually publishes "Employment Information" on its website and in other marketing materials (*e.g.* in a *Viewbook* and *Student Report*) purporting to set forth the employment and salary history of the previous year's graduates within the first nine months after graduation. The employment information is based on surveys sent to the recent law school graduates.

---

[1]Plaintiffs also alleged violation of the Consumer Fraud Act, common-law fraud and negligent misrepresentation against certain unnamed "Lawyer Defendants" (also referred to as "Does 1-20"). The circuit court dismissed the counts against the "Lawyer Defendants" pursuant to section 2-619 of the Code of Civil Procedure, finding it lacked subject matter jurisdiction to consider claims against unknown or fictitious defendants. See *Bogseth v. Emanuel*, 166 Ill. 2d 507, 513-14 (1995). Plaintiffs make no argument on appeal regarding the dismissal of their counts against the "Lawyer Defendants" based on lack of subject matter jurisdiction and, therefore, have waived review thereof. See *Fink v. Banks*, 2013 IL App (1st) 122177, ¶ 14.

¶ 9        Plaintiffs alleged that in 2006, DePaul published employment information stating that 98% of its graduates in the class of 2005 were employed within nine months of graduation, with 57% working in private practice, 21% working in business, 12% working in government, 4% working in public interest, 3% working as judicial clerks, and 2% working in academia. The mean starting salary was stated to be $82,890 for those in private practice and $72,637 for those in business.

¶ 10       Plaintiffs alleged that in 2008, DePaul published employment information stating that 95% of its graduates in the class of 2007 were employed within nine months of graduation, with 62% working in private practice, 19% working in business, 12% working in government, 4% working in the public interest, 1% working as judicial clerks, and 2% working in academia. The mean starting salary was stated to be $82,890 for those in private practice and $72,637 for those in business.

¶ 11       Plaintiffs alleged that in 2010, DePaul published employment information stating that 93% of its graduates in the class of 2009 were employed within nine months of graduation, with 50% working in private practice, 26% working in business, 12% working in government, 4.4% working in the public interest, 1.5% working as judicial clerks, and 4.4% working in academia. The mean starting salary was stated to be $97,056 for those in private practice and $74,267 for those in business.

¶ 12       Plaintiffs alleged that DePaul's employment information for the 2005, 2007, and 2009 classes was "incomplete, false and materially misleading" in that the employment rate of its graduates within nine months of graduation was "substantially overstated" because: "the jobs reported included *any* type of employment, including jobs that did not require or even prefer a J.D. degree"; "the jobs reported included jobs that were part-time or were full-time but temporary short-term positions"; and "the jobs reported included such as 'research assistant' or 'intern' or other 'make-work' positions–including some which DePaul provided to its own graduates while they were studying for the Bar exams and/or to tide them over until they found 'real jobs' requiring a J.D. degree." (Emphasis in original.)

¶ 13       Plaintiffs alleged "[t]he salaries reported were substantially overstated, because DePaul, on [the] one hand, reported as employment numbers the numbers from *any* kind of employment (including temporary and part-time), but, on the other hand, reported salary information based *only* on full-time employment. Given that full-time employment generally pays significantly higher salaries than part-time or temporary employment, the published salary numbers were significantly distorted to show higher salaries than statistically warranted and, therefore, were inherently misleading." (Emphases in original.)

¶ 14       Plaintiffs alleged "the data reported in the Employment Information implied a much stronger statistical basis than was the fact and failed to show the material distinctions between graduates with full-time permanent positions as lawyers and other graduates."

¶ 15       Plaintiffs alleged DePaul reported the employment information for the 2005, 2007, and 2009 classes "in its print and electronic marketing materials and to third parties, such as the ABA, the National Association for Law Placement ('NALP'), and U.S. News & World Report ('U.S. News')." "The cumulative effect of [DePaul's] touting its post-graduate employment placement record–whether in its own publications or in its reports to other organizations–was to imply to prospective students, and to induce prospective students to infer, that DePaul's employment statistics accurately reflected their likelihood of finding a permanent full-time job as a lawyer within nine months after graduation."

¶ 16        Plaintiffs alleged they each relied on the employment information for the 2005, 2007, and 2009 classes when choosing to apply to, enroll, and continue to be enrolled in DePaul. Plaintiffs paid between $30,000 and $41,240 per year in tuition, depending on the year, so they could attend DePaul, and incurred substantial debt.

¶ 17        Plaintiffs alleged DePaul violated the Consumer Fraud Act and committed common-law fraud and negligent misrepresentation by publishing the employment information for the 2005, 2007, and 2009 classes containing the misleading employment and salary statistics which plaintiffs relied upon when deciding to enroll and remain enrolled at DePaul and when taking out the loans "that will burden them for years." As to damages, plaintiffs alleged:

> "DePaul inflated its employment statistics by a percentage to be determined in this litigation. Call it X percent.
>
> Those inflated statistics purported to be a reasonable projection by DePaul of [p]laintiffs' post-graduate employment prospects if he or she enrolled in DePaul rather than elsewhere.
>
> To the extent the statistics were inflated by X percent, the advantage to [p]laintiffs and the value of the tuition and fees they paid to DePaul was reduced by X percent. Accordingly, DePaul charged for X, but the [p]laintiffs did not receive X.
>
> Therefore, [p]laintiffs were damaged at least in the amounts of:
>
> (a) X percent of the amount they paid to DePaul, and
>
> (b) a statistically determinable amount of the lifetime income they would have been expected to earn after graduating from DePaul if DePaul's post-graduation employment statistics had been those that DePaul had represented in the Employment Information, *less* the statistically determinable amount of the lifetime income they would now be expected to earn, having graduated from DePaul, based upon DePaul's true post-graduation employment statistics." (Emphasis in original; internal paragraph numbers omitted.)

¶ 18        DePaul filed a combined motion to dismiss plaintiffs' first-amended class action complaint. Pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)), DePaul contended that plaintiffs' Consumer Fraud Act claim should be dismissed for failing to adequately plead the required elements of a deceptive act, causation or damages. In particular, DePaul contended that the employment information for the 2005, 2007, and 2009 classes, in conjunction with the annual ABA-LSAC Official Guide to ABA-Approved Law Schools (ABA Guide), which contains yearly employment statistics reported by DePaul, adequately informed plaintiffs that they were not guaranteed full-time legal employment with a high starting salary upon graduation and, thus, were not deceptive. DePaul also contended that plaintiffs' alleged damages were not proximately caused by the employment information for the 2005, 2007, and 2009 classes, and that plaintiffs failed to allege any determinable damages.

¶ 19        DePaul also contended that plaintiffs' common-law fraud and negligent misrepresentation causes of action should be dismissed pursuant to section 2-615 of the Code for failing to adequately plead the required elements of misrepresentation, reliance, causation or damages.

¶ 20        Pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)), DePaul contended that plaintiffs' Consumer Fraud Act claim should also be dismissed because the so-called "safe harbor provision" of the Consumer Fraud Act exempts it from liability here.

The safe harbor provision exempts conduct "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b (West 2012). DePaul argued that the safe harbor provision defeats plaintiffs' Consumer Fraud Act claim because the employment and salary statistics it reported in the employment information for the 2005, 2007, and 2009 classes were authorized by a regulatory body, the ABA, acting under the statutory authority of the Higher Education Act (20 U.S.C. § 1001 *et seq.* (2006)).

¶ 21 The circuit court granted DePaul's combined motion to dismiss. Pursuant to section 2-615 of the Code, the circuit court found that plaintiffs failed to adequately allege: any fraudulent misrepresentation or fraudulent concealment by DePaul in the employment information for the 2005, 2007 and 2009 classes; any reasonable reliance by plaintiffs on the employment information for the 2005, 2007, and 2009 classes; any proximate cause of plaintiffs' damages from their reliance on the employment information for the 2005, 2007, and 2009 classes; and any ascertainable damages. Accordingly, the circuit court found that plaintiffs failed to state a cause of action for a Consumer Fraud Act violation, common-law fraud, and negligent misrepresentation.

¶ 22 Pursuant to section 2-619(a)(9) of the Code, the circuit court found that plaintiffs' Consumer Fraud Act claim falls within the safe harbor provision of the Consumer Fraud Act. The circuit court dismissed the entirety of plaintiffs' first-amended class action complaint with prejudice. Plaintiffs appeal.

¶ 23 II. Analysis of the Section 2-615 Dismissal

¶ 24 "A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. [Citation.] In ruling on a section 2-615 motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered." *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). All well-pleaded facts must be taken as true. *Unterschuetz v. City of Chicago*, 346 Ill. App. 3d 65, 68-69 (2004). However, "a court cannot accept as true mere conclusions unsupported by specific facts." *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Exhibits attached to the complaint are considered part of the pleadings. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 431 (2004). We review an order granting a section 2-615 dismissal *de novo*. *McGinnis*, 238 Ill. 2d at 291.

¶ 25 A. Procedural Note

¶ 26 In their first-amended class action complaint, plaintiffs pleaded certain facts regarding the contents of the employment information for the 2005, 2007, and 2009 classes, but they failed to attach copies of this employment information for the 2005, 2007, and 2009 classes to the first-amended class action complaint. See 735 ILCS 5/2-606 (West 2012) ("If a claim or defense is founded upon a written instrument, a copy thereof *** must be attached to the pleading as an exhibit or recited therein ***. *** [T]he exhibit constitutes a part of the pleading for all purposes."). Accordingly, in our analysis of the section 2-615 dismissal order, we consider only plaintiffs' well-pleaded allegations regarding the contents of the employment information for the 2005, 2007, and 2009 classes; we do not consider any contents that were not pleaded or attached to the first-amended class action complaint. See *Gilmore v. Stanmar,*

*Inc.*, 261 Ill. App. 3d 651, 654 (1994) (we ordinarily do not consider the contents of documents outside the complaint when addressing a section 2-615 motion to dismiss).

¶ 27 In their first-amended class action complaint, plaintiffs alleged that DePaul reported its employment information to the ABA. Plaintiffs did not attach any ABA documents containing the employment information to their first-amended class action complaint. However, we note that DePaul attached the ABA Guides for the 2003 through 2009 classes to its reply in support of its combined motion to dismiss; the ABA Guides contain yearly employment statistics reported to NALP by DePaul. The ABA is the Department of Education's accrediting agent for law schools (see Recognition of Accrediting Agencies, 73 Fed. Reg. 11404 (Mar. 3, 2008)) and, as such, serves as a proxy for the Department of Education (*Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools & Colleges*, 44 F.3d 447, 449 (7th Cir. 1994)). Accordingly, in analyzing the section 2-615 dismissal order, we may take judicial notice of the ABA Guides as public records even though they were not attached to the first-amended class action complaint. See, *e.g.*, *Dietz v. Property Tax Appeal Board*, 191 Ill. App. 3d 468, 477 (1989) (judicial notice taken of Illinois Real Property Appraisal Manual, issued by Department of Revenue, as a public record).

¶ 28 ### B. Plaintiffs' Consumer Fraud Act Count

¶ 29 Plaintiffs alleged DePaul violated the Consumer Fraud Act by overstating its graduates' employment and salary statistics in the employment information for the 2005, 2007, and 2009 classes.

¶ 30 "To state a claim under the [Consumer Fraud] Act, a complaint must set forth specific facts showing: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. [Citation.] To bring a civil suit for damages, the [Consumer Fraud] Act requires that the plaintiff suffer 'actual damages.' [Citation.] Plaintiff's reliance is not an element of statutory consumer fraud." *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 283 (2006).

¶ 31 ### 1. Plaintiffs Failed to Adequately Allege a Deceptive Act
or Practice by DePaul

¶ 32 "A complaint stating a claim under the Consumer Fraud Act must state with particularity and specificity the deceptive [unfair] manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint." (Internal quotation marks omitted.) *Demitro v. General Motors Acceptance Corp.*, 388 Ill. App. 3d 15, 20 (2009).

¶ 33 The Consumer Fraud Act defines deceptive acts or practices as: "including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 2012).

¶ 34 Initially, we note that with respect to the element of a deceptive act or practice committed by DePaul, plaintiffs alleged that the employment information for the 2005, 2007, and 2009 classes published by DePaul containing employment and salary statistics for its graduates was "false." However, plaintiffs pleaded no facts showing that the statistics listed therein regarding

the percentages of graduates employed in the various employment categories, and their average salaries, were untrue. Plaintiffs' unsupported, conclusory allegations regarding the falsity of the employment information were insufficient to assert any deceptive act or practice committed by DePaul. See *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 703 (2005) (conclusory statements of fact do not suffice to state a cause of action).

¶ 35 Plaintiffs further alleged DePaul committed a deceptive act or practice by failing to disclose that its employment information for the 2005, 2007, and 2009 classes, which indicated that almost all of its graduates for those years were employed within nine months of graduation, included temporary, part-time, and nonlegal jobs. Plaintiffs alleged: "The context of the employment information made it reasonably appear to the public, and especially to [p]laintiffs and other prospective law students, that the jobs reported represented full-time permanent employment in positions for which a J.D. degree was required or preferred."

¶ 36 More specifically, plaintiffs alleged:

"The Employment Information omitted and concealed material information that was necessary for recipients to properly evaluate the data contained, particularly:

(i) that the term 'business' jobs did not mean jobs working as lawyers working in an entity other than a law firm, but included jobs that any college graduate (or even non-graduate) could obtain, such as waiter, delivery person, barista or store clerk.

(ii) that the data were obtained only through surveys voluntarily returned.

(iii) the percentage of surveys returned and that only a small percentage had been returned. ***

(iv) the respective numbers or percentages of graduates reporting employment who were employed (A) in the legal profession in a position requiring a J.D. degree, or (B) in a non-legal profession in a position preferring a J.D. degree, or (C) in a related profession, or (D) in a position not requiring a J.D. degree.

(v) the respective numbers or percentages of graduates in each category of employment employed in a full time or part time or temporary positions.

(vi) that the data in the Employment Information had not been audited or otherwise verified."

¶ 37 Plaintiffs further alleged: "As a result, the data reported in the employment information implied a much stronger statistical basis than was the fact and failed to show the material distinctions between graduates with full-time permanent positions as lawyers and other graduates."

¶ 38 We find that plaintiffs failed to adequately plead any omission or misrepresentation by DePaul constituting a deceptive act or practice. As to the allegations that DePaul committed a deceptive act or practice by failing to inform plaintiffs that the employment information for the 2005, 2007, and 2009 classes was based on voluntary surveys as opposed to audited data, plaintiffs expressly acknowledged in their first-amended class action complaint that they were aware "[t]he Employment Information was based upon surveys sent to then recent DePaul graduates." Thus, as plaintiffs admittedly were aware of the basis for the data contained in the employment information, their claims of deception regarding DePaul's failure to inform them of that basis necessarily fails.

¶ 39    As to their allegation that DePaul committed a deceptive act or practice by failing to inform them that "only a small percentage" of surveys had been returned, plaintiffs failed to plead any facts showing the *actual* percentage of surveys returned. In the absence of any facts pleaded regarding the actual percentage of surveys returned, plaintiffs' allegation that "only a small percentage" of surveys had been returned is conclusory, may not be accepted as true and is insufficient to withstand a section 2-615 motion to dismiss. *Id.*; *Patrick Engineering*, 2012 IL 113148, ¶ 31.

¶ 40    As to plaintiffs' allegations that DePaul committed a deceptive act or practice by failing to inform them of the percentages of graduates employed in nonlegal and/or part-time positions, causing plaintiffs to believe that the data reported in the employment information for the 2005, 2007, and 2009 classes related only to full-time legal employment, we note no allegations by plaintiffs that DePaul ever expressly indicated that its employment information referred only to full-time, legal employment requiring a J.D. degree. As pleaded by plaintiffs, the employment information for the 2005, 2007, and 2009 classes expressly provided the percentage of DePaul's graduates employed within the first nine months after graduation; this is a generalized employment statistic which does not differentiate among legal and nonlegal and full-time and part-time positions. Plaintiffs' interpretation of this generalized employment statistic as including only full-time legal positions has been found to be unreasonable as a matter of law by courts in other jurisdictions which have considered the same issue. See, *e.g.*, *Bevelacqua v. Brooklyn Law School*, No. 500175/2012, 2013 WL 1761504 at *6 (N.Y. Sup. Ct. Apr. 22, 2013) (citing *Gomez-Jimenez v. New York Law School*, N.Y.S.2d 54, 58-59 (N.Y. App. Div. 2012)). The court in *Gomez-Jimenez* recognized that although similar employment information published by New York Law School likely left "an incomplete, if not false impression of the school's job placement success," that fact, standing alone, did not give rise to an actionable claim. *Gomez-Jimenez*, 956 N.Y.S.2d at 59. Similarly, while the information published by DePaul could certainly have been more specific about the types of employment included in the reported percentage of employed graduates, plaintiffs have identified no affirmative misrepresentation by DePaul of those figures. The gloss placed by plaintiffs on that information, *i.e.*, that it represented the percentage of graduates employed within nine months in jobs for which a law degree was either required or preferred, does not give rise to a cognizable claim. Plaintiffs' conclusory allegation that DePaul deceptively indicated that the generalized employment statistic reported in the employment information for the 2005, 2007, and 2009 classes represented only full-time, legal employment may not be accepted as true in the absence of any claimed affirmative misstatement and is, thus, insufficient to withstand a section 2-615 motion to dismiss. *Floyd*, 355 Ill. App. 3d at 703; *Patrick Engineering*, 2012 IL 113148, ¶ 31.

¶ 41    We also note that as pleaded by plaintiffs, the employment information for the 2005, 2007, and 2009 classes broke down the employment data into six employment categories, including, private practice, business, government, public interest, judicial clerkships, and academia. As to plaintiffs' allegation that DePaul committed a deceptive act or practice in its employment information for the 2005, 2007, and 2009 classes by failing to inform them that the jobs listed in the business category included nonlegal employment, causing them to reasonably believe that the persons listed therein had all been employed as lawyers, we again note no allegation by plaintiffs that DePaul ever expressly indicated that the business category referred only to legal employment requiring a J.D. degree. Plaintiffs' conclusory allegation that DePaul deceptively

indicated that the business category of the employment information for the 2005, 2007, and 2009 classes referred only to legal employment may not be accepted as true and is insufficient to withstand a section 2-615 motion to dismiss. *Id*.

¶ 42 Further, with the exception of the listed employment categories of private practice and judicial clerkships, for which a J.D. degree would presumably be required or preferred, none of the other employment categories listed in the employment information for the 2005, 2007, and 2009 classes necessarily excludes nonattorneys on its face. See *Bevelacqua*, 2013 WL 1761504, at *6-7 ("it has long been conventional wisdom that a law degree affords its owner much greater flexibility than most other graduate degrees and that many people pursue a law degree without ever intending to practice law, a consideration for which plaintiffs' narrow interpretation of the aggregated statistic makes no allowance"). According to the employment information for the 2005, 2007, and 2009 classes as pleaded by plaintiffs, these other employment categories (business, government, public interest, and academia), for which a J.D. degree is not necessarily required, constituted 39% of DePaul's employed graduates in 2005, 37% of its employed graduates in 2007, and 46.8% of its employed graduates in 2009. Additionally, none of the employment categories listed in the employment information for the 2005, 2007, and 2009 classes necessarily excludes part-time employees.

¶ 43 Thus, as pleaded by plaintiffs, the employment information for the 2005, 2007, and 2009 classes, which indicates that over one-third of DePaul's graduates for those years obtained employment in fields that do not necessarily require a J.D. degree or exclude part-time workers, does not, in and of itself, deceptively misrepresent its employment data as applying only to full-time, legal positions.

¶ 44 Further, in analyzing whether plaintiffs sufficiently alleged a deceptive act or practice committed by DePaul in the publication of its employment information, we note that the analysis must consider whether the act was deceptive as reasonably understood in light of *all the information* available to plaintiffs. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938-39 (7th Cir. 2001) (citing *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207 (1997), and *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307 (1996)). Plaintiffs here had more than simply the employment information DePaul reported on its website and in its *Viewbook* and *Student Report* for the 2005, 2007, and 2009 classes to rely on when considering their future job and salary prospects; as noted in their first-amended class action complaint, plaintiffs also were aware that the ABA was an additional source of information regarding DePaul graduates' job prospects. As discussed previously in this opinion, we take judicial notice of the ABA Guides for the 2005, 2007, and 2009 classes containing this information which is contained in the record on appeal. Each of those ABA Guides states that members of each graduating class obtained "legal, *nonlegal*, and full- and *part-time* jobs." (Emphases added.) Each of the ABA Guides also expressly provides that: the jobs reported in private practice include administrative positions; the jobs reported in business include those in retail; and some reported jobs do not require legal training.

¶ 45 In conclusion, plaintiffs failed to adequately plead that DePaul committed a deceptive act or practice by misrepresenting its employment information for the 2005, 2007, and 2009 classes as applying only to full-time, legal positions, given that: (1) the employment information stated that over one-third of DePaul's graduates for those years took jobs for which J.D. degrees were not necessarily required, and did *not* state that all those jobs were

full-time; and (2) the ABA Guides for those years stated that members of each graduating class acquired part-time and nonlegal jobs.

¶ 46    Next, we consider plaintiffs' allegation that DePaul committed a deceptive act or practice in the employment information for the 2005, 2007, and 2009 classes by only reporting the salaries of its graduates who obtained full-time employment. Plaintiffs alleged:

"The salaries reported were substantially overstated, because DePaul, on [the] one hand, reported as employment numbers the numbers from *any* kind of employment (including temporary and part-time), but, on the other hand, reported salary information based *only* on full-time employment. Given that full-time employment generally pays significantly higher salaries than part-time or temporary employment, the published salary numbers were significantly distorted to show higher salaries than statistically warranted and, therefore, were inherently misleading." (Emphases in original.)

¶ 47    Plaintiffs failed to adequately allege deception by DePaul in the salary disclosures contained in the employment information for the 2005, 2007, and 2009 classes. First, plaintiffs never alleged they did not realize that the salaries listed in the employment information for the 2005, 2007, and 2009 classes ($82,890 in 2005 and 2007, and $97,056 in 2009 for persons employed in private practice, and $72,637 in 2005 and 2007, and $74,267 in 2009 for persons employed in business) were full-time salaries. Further, the salaries reported in the employment information for the 2005, 2007, and 2009 classes were listed as averages, meaning that some of the graduates earned more than the average while others earned less than the average. Plaintiffs did not allege that any promises were made to them that they would earn at or above the average salaries listed in the employment information for the 2005, 2007, and 2009 classes. If there was any doubt about their likelihood of earning a certain salary when first hired or over their lifetime, the ABA Guides for those years expressly stated that "[t]he highest-paying jobs were the exception rather than the rule." Thus, plaintiffs failed to adequately plead that the salary information published by DePaul in the employment information for the 2005, 2007, and 2009 classes deceived them with regard to the salaries they could be expected to earn upon graduation.

¶ 48    Further, we note the first-amended class action complaint indicated plaintiffs received from DePaul exactly what they paid for and were promised. Specifically, plaintiffs alleged they enrolled in DePaul, and paid thousands of dollars in tuition and took out student loans "to obtain a Juris Doctorate (J.D.) degree, which is a prerequisite for the practice of law." Plaintiffs alleged they all completed their legal education and obtained J.D. degrees from DePaul and their law licenses, enabling them to practice law. Plaintiffs point to no promises made to them by DePaul regarding the outcome of their subsequent job searches, or guaranteeing them full-time legal employment or a set salary. As plaintiffs completed their legal education at DePaul and received their J.D. degrees, which was all that was promised to them in return for the tuition paid, we find that plaintiffs failed to adequately plead any deceptive acts or practices committed by DePaul.

¶ 49                    2. Plaintiffs Failed to Adequately Allege Proximate Cause

¶ 50    Plaintiffs alleged two related injuries: (1) the inability to obtain the jobs and lifetime incomes they expected after graduating from DePaul; and (2) their contention that their J.D. degrees from DePaul are worth less than the tuition paid for those degrees given their

perceived lifetime career prospects. Stated either way, plaintiffs' injuries are based on their postgraduate jobs and incomes. Plaintiffs alleged their injuries were proximately caused by their reliance on the allegedly deceptive employment information for the 2005, 2007, and 2009 classes, which caused them to enroll and remain enrolled in DePaul, pay the inflated tuition, take out loans, and graduate with disappointing job prospects.

¶ 51    The element of proximate cause contains two requirements: the cause-in-fact and the legal cause. *Bell v. Bakus*, 2014 IL App (1st) 131043, ¶ 23. In the context of a fraud claim, cause-in-fact is "but for" cause. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 269 (2005). "That is, the relevant inquiry is whether the harm would have occurred absent the defendant's conduct." *Id*. Legal cause requires that the alleged injury be a foreseeable consequence of the alleged misrepresentation. *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 326 (1998).

¶ 52    Plaintiffs have failed to adequately allege cause-in-fact, *i.e*., that "but for" DePaul's allegedly misleading employment information for the 2005, 2007, and 2009 classes, causing them to enroll and remain enrolled in DePaul as opposed to some unidentified other law schools, they would have obtained the high-paying legal jobs they now want years later. Initially, we note plaintiffs did not allege they even applied to (much less were accepted by) any other law schools, nor did they allege that other potential law schools yielded better actual employment and salary statistics relating to the graduating classes of plaintiffs at issue. Thus, plaintiffs failed to adequately allege that but for the employment information for the 2005, 2007, and 2009 classes they would have enrolled in other law schools and realized their desired jobs and lifetime earnings upon graduation.

¶ 53    Even if plaintiffs *had* alleged that they were accepted to, and would have enrolled in, other law schools with better actual employment and salary statistics if not for the employment information for the 2005, 2007, and 2009 classes, those allegations still would not have been sufficient to allege cause-in-fact. As aptly noted by the circuit court here in its written opinion granting DePaul's motion to dismiss, a law school graduate's success in obtaining the job and lifetime salary he/she desires is the result of a multitude of factors, including but not limited to: "the state of the economy, the overall availability of jobs in the legal profession, the overall academic record of the graduate, any practical experience of the graduate such as summer associate positions, internships and clinics, the efforts put into obtaining legal employment, whether the graduate interviews well, and the geographic area in which employment is sought. Additional factors impacting the amount a lawyer may or may not earn over a lifetime include, but are not limited to, whether the lawyer chooses to practice in the private or public sector, whether the lawyer takes time off for childrearing or other reasons, whether the lawyer, if in private practice, makes partner, economic conditions over the course of the lawyer's lifetime, etc."

¶ 54    Given the myriad factors that go into a successful job search and career earnings, we cannot say that "but for" the employment information for the 2005, 2007, and 2009 classes at issue here plaintiffs would have obtained their desired jobs/salaries even upon graduation from different law schools. Accordingly, plaintiffs failed to adequately plead cause-in-fact.

¶ 55    Further, plaintiffs failed to adequately plead legal causation, as we cannot say that plaintiffs' failure to secure the jobs/salaries they desired upon graduation was a foreseeable consequence of their decisions to enroll and remain enrolled in DePaul in reliance on the employment information for the 2005, 2007, and 2009 classes. At the time of plaintiffs'

enrollment in DePaul, one could not foresee their subsequent academic records and practical experiences while at DePaul, the geographic areas in which they would seek employment, their efforts put into obtaining legal employment, their interview abilities, and the economic climate and overall availability of jobs during the period of their job searches, all of which (as noted by the circuit court) would impact their job searches and salaries. As plaintiffs' injuries (*i.e.*, their disappointing post-graduate jobs and incomes) were not foreseeable consequences of their decisions to enroll and remain enrolled in DePaul in reliance on the employment information for the 2005, 2007, and 2009 classes, plaintiffs failed to adequately plead legal causation.

¶ 56                    3. Plaintiffs Failed to Adequately Plead Damages

¶ 57        To sufficiently plead a cause of action under the Consumer Fraud Act, plaintiffs must plead actual damages. *Dubey v. Public Storage, Inc*., 395 Ill. App. 3d 342, 353 (2009). Damages may not be predicated on mere speculation, hypothesis, conjecture or whim. *Petty v. Chrysler Corp*., 343 Ill. App. 3d 815, 823 (2003).

¶ 58        Plaintiffs sought to recover as damages: (1) the difference between what they paid in tuition based on the alleged misrepresentations regarding jobs and salary data in the employment information for the 2005, 2007, and 2009 classes, and what they should have paid in tuition based on the "true" value of a DePaul degree; and (2) the additional lifetime income they would have been expected to earn had the jobs and salary data contained in the employment information for the 2005, 2007, and 2009 classes been true.

¶ 59        As discussed earlier in this opinion, though, plaintiffs failed to adequately allege any misrepresentations by DePaul in its employment information for the 2005, 2007, and 2009 classes, *i.e*., plaintiffs received exactly what they paid for (the J.D. degrees) and, thus, have failed to show any actual damages.

¶ 60        Even if plaintiffs *had* adequately pleaded misrepresentation by DePaul in its employment information, they failed to plead any reliable mechanism for calculating the "true" value of their law degrees because of the alleged misrepresentation. With respect to the calculation thereof, plaintiffs alleged that DePaul "inflated its employment statistics by a percentage to be determined in this litigation. Call it X percent. Those inflated statistics purported to be a reasonable projection by DePaul of [p]laintiffs' post-graduate employment prospects if he or she enrolled in DePaul rather than elsewhere. To the extent the statistics were inflated by X percent, the advantage to [p]laintiffs and the value of the tuition and fees they paid to DePaul was reduced by X percent. Accordingly, DePaul charged for X, but the [p]laintiffs did not receive X. Therefore, [p]laintiffs were damaged at least in the amount[ ] of *** X percent of the amount they paid to DePaul." (Internal paragraph numbers omitted.)

¶ 61        However, the employment statistics listed in the employment information for the 2005, 2007, and 2009 classes were only generalized, historical averages *for the members of those particular classes*, and they did *not* explicitly promise or project that those averages would be the same for individuals (such as plaintiffs) graduating years later. Thus, even assuming, for the sake of argument only, that those generalized, historical averages for the 2005, 2007, and 2009 graduating classes were inflated by "X percent," plaintiffs have still failed to plead how they were damaged thereby, given that those averages did not constitute any kind of promise to the individual plaintiffs that they could expect employment at the same rate. See also *Bevelacqua*, 2013 WL 1761504, and *Gomez-Jimenez*, 856 N.Y.S.2d 54 (holding that a damages calculation based on the difference between what graduates paid in tuition based on

alleged misrepresentations and the true value of the degrees was speculative and required dismissal).

¶ 62    Plaintiffs also alleged they were damaged in the amount of: "a statistically determinable amount of the lifetime income they would have been expected to earn after graduating from DePaul if DePaul's post-graduation employment statistics had been those that DePaul had represented in the employment information, *less* the statistically determinable amount of the lifetime income they would now be expected to earn, having graduated from DePaul, based upon DePaul's true post-graduation employment statistics." (Emphasis in original.)

¶ 63    In other words, plaintiffs seek the difference between their annual earnings and what they expected to annually earn based on the employment information for the 2005, 2007, and 2009 classes. As we just discussed, though, the employment and salary statistics listed in the employment information for the 2005, 2007, and 2009 classes consisted of generalized, historical averages for those particular classes and did not constitute any type of promise or projection for the individual plaintiffs here; thus, even assuming for the sake of argument that the employment information for the 2005, 2007, and 2009 classes did not recite DePaul's "true" postgraduation employment statistics for those classes, plaintiffs have failed to adequately plead how they were damaged thereby given that these statistics did not apply to plaintiffs or make any promises or projections regarding their future employment and salary prospects.

¶ 64    Further, we note that with the exception of plaintiff Jamie Walsh, there are no allegations in the first-amended class action complaint regarding the actual salaries earned by the other plaintiffs. In the absence of such salary information, plaintiffs' damages claims, which are predicated on the difference between their actual salaries and the average salaries listed in the employment information for the 2005, 2007, and 2009 classes, are undeterminable and, thus, not adequately pleaded.

¶ 65    Finally, we also agree with the circuit court's apt determination, when cataloguing all the myriad factors (discussed above) impacting an attorney's lifetime earnings, that "[n]one of these factors can be determined with any kind of certainty and, therefore, the amount of damages, if any, sustained by [p]laintiffs is wholly speculative."

¶ 66    Plaintiffs argue that any ruling on damages is "premature as plaintiffs have not had the opportunity for document discovery." We disagree. See *Yu v. International Business Machines Corp.*, 314 Ill. App. 3d 892, 897 (2000) (affirming the section 2-615 dismissal of plaintiff's claims of consumer fraud, deceptive trade practices and negligence, where plaintiff failed to adequately plead damages).

¶ 67                                                4. Conclusion

¶ 68    In conclusion, as plaintiffs failed to adequately plead a deceptive act or practice by DePaul, proximate cause, or actual damages, their Consumer Fraud Act claim failed to state a cause of action. We affirm the dismissal of plaintiffs' Consumer Fraud Act count.

¶ 69                                C. Plaintiffs' Common-Law Fraud Claim

¶ 70    Plaintiffs alleged DePaul committed common-law fraud by overstating its graduates' employment and salary statistics in the employment information for the 2005, 2007, and 2009 classes.

¶ 71    "To state a cause of action for common-law fraud, a plaintiff must plead: (1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15.

¶ 72    With respect to the first two elements of common-law fraud, that defendant knowingly made a false statement of material fact, plaintiffs alleged DePaul knowingly made "incomplete, false and materially misleading" statements in the employment information for the 2005, 2007, and 2009 classes regarding the number of graduates employed as full-time attorneys within nine months of graduation, as well as the size of their salaries. However, as discussed in detail earlier in this opinion, we find that plaintiffs failed to adequately allege any incomplete, false or misleading statements by DePaul in its employment information for the 2005, 2007, and 2009 classes regarding the employment or salaries of its graduates for those years.

¶ 73    With respect to the reasonable reliance element, plaintiffs alleged they enrolled in DePaul after reasonably relying on the employment information for the 2005, 2007, and 2009 classes as reflecting the likelihood they would find high-paying, full-time legal employment within nine months of graduation. However, we find plaintiffs failed to adequately plead the reasonableness of their reliance on the employment information for the 2005, 2007, and 2009 classes as being indicative they would find such high-paying, full-time legal employment, given that: (1) the reported employment information, in conjunction with the ABA Guides, disclosed that high-paying jobs were the exception rather than the rule, and that some members of the graduating classes obtained part-time and nonlegal jobs; and (2) the employment and salary data contained in the employment information consisted of historical data for persons who graduated two to six years prior to plaintiffs, did not reflect the economic climate and availability of jobs at the time of plaintiffs' job searches, and did not constitute any type of promise or projection regarding plaintiffs' individual job/salary prospects either with regard to their first jobs and salaries or their jobs and salaries over their lifetime.

¶ 74    In addition, we note that although plaintiffs alleged they all relied on the employment information for the 2005, 2007, *and* 2009 classes when deciding to enroll and remain enrolled at DePaul, some of the individual plaintiffs graduated from DePaul prior to the publication of the employment information for the class of 2009 (*i.e.*, Brent Davidson, Adam Smestad, Jaime Walsh, and Brian Loker) and, thus, could not have relied thereon when determining whether to enroll and remain enrolled in DePaul. Jaime Walsh, who graduated from DePaul prior to the publication of the employment information for the class of 2007, also could not have relied on that information when determining whether to enroll and remain enrolled in DePaul.

¶ 75    Also, as discussed earlier in this opinion, plaintiffs failed to adequately allege proximate cause and damages. Accordingly, plaintiffs' claim of common-law fraud failed to state a cause of action.

¶ 76    Plaintiffs argue that *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 235 F. Supp. 2d 549 (S.D. Tex. 2002), compels a different result. Plaintiffs argue that Enron (a New York Stock Exchange-listed public company in the energy business) engaged in fraud by manipulating its books and records to make it appear more profitable than it actually was. After the fraud came to light and Enron went bankrupt and the stock lost its value, investors were able to recover from many defendants, including the Enron directors. Plaintiffs argue that

DePaul similarly "created a fictional track record of employment that made DePaul's track record look far better than it actually was." Plaintiffs argue that, similar to the investors in Enron, they should be allowed to recover the reduced value of their J.D. degree and any lost earnings caused by DePaul's fraud in connection with its false and misleading employment and salary statistics contained in the employment information for the 2005, 2007, and 2009 classes.

¶ 77     First, we note plaintiffs waived review of this argument by failing to cite to the relevant portions of the 150-page *Enron* opinion upon which they rely. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Waiver aside, *Enron* is inapposite because, unlike in *Enron*, plaintiffs here failed to adequately allege any false or misleading statements/statistics in the employment information for the 2005, 2007, and 2009 classes, nor did they adequately allege reasonable reliance, proximate cause or damages. See our discussion earlier in this opinion regarding the sufficiency of plaintiffs' allegations.

¶ 78     Accordingly, for the foregoing reasons, we affirm the dismissal of plaintiffs' common-law fraud count.

¶ 79                    D. Plaintiffs' Fraudulent Concealment Claim as
                            Part of Common-Law Fraud

¶ 80     The circuit court determined that plaintiffs' first-amended class action complaint also sought recovery for fraudulent concealment under their common-law fraud claim, but that it failed to state a cause of action. On appeal, plaintiffs admit they never intended to plead a fraudulent concealment claim; nonetheless, they ask us to review the circuit court's ruling because they contend their first-amended class action complaint sufficiently pleaded such a claim and they should be allowed to recover thereon. DePaul responds that since plaintiffs concede they never intended to plead fraudulent concealment, we should consider the issue "abandoned" and not subject to appellate review.

¶ 81     Review of the record indicates that, during briefing in the circuit court on the combined motion to dismiss, both parties addressed whether plaintiffs' first-amended class action complaint adequately alleged that DePaul committed fraudulent concealment by failing to disclose that the employment information for the 2005, 2007, and 2009 classes overstated its graduates' employment and salary statistics. Plaintiffs contended their first-amended class action complaint stated a cause of action for fraudulent concealment; DePaul argued to the contrary. As the issue was briefed by both parties and ruled on in the circuit court, and has been briefed on appeal, we find that it is properly before us.

¶ 82     "To prove fraudulent concealment, a plaintiff must establish that (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902-03 (2005).

¶ 83    To assert a claim for fraudulent concealment, plaintiffs must establish the existence of a special or fiduciary relationship, which in turn gives rise to a duty to speak. *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 345 (2011).

¶ 84    The parties here dispute whether such a special or fiduciary relationship existed between plaintiffs and DePaul, giving rise to a duty to speak. We need not resolve this issue, though, because even assuming for the sake of argument that such a duty existed, plaintiffs still failed to adequately plead all the required elements to state a cause of action for fraudulent concealment. Specifically, the material fact alleged to have been concealed is that DePaul deceptively overstated its graduates' employment and salary data in its employment information for the 2005, 2007, and 2009 classes. As discussed earlier in this opinion, though, plaintiffs failed to adequately plead that DePaul committed any such deceptive overstatement in the employment information for the 2005, 2007, and 2009 classes; accordingly, plaintiffs' claim of fraudulent concealment based on this claimed overstatement necessarily fails. Also as discussed earlier in this opinion, plaintiffs failed to adequately allege reasonable reliance, proximate cause and damages. Therefore, we affirm the circuit court's dismissal of plaintiffs' fraudulent concealment count.

¶ 85                    E. Plaintiffs' Negligent Misrepresentation Claim

¶ 86    Plaintiffs alleged DePaul committed negligent misrepresentation by overstating the employment and salary data in the employment information for the 2005, 2007, and 2009 classes. DePaul contends plaintiffs forfeited appellate review of the dismissal of their negligent misrepresentation claim by failing to challenge that dismissal. Review of plaintiffs' appellant's brief indicates that, contrary to DePaul's argument, they *do* challenge the dismissal; accordingly, we address the issue on its merits.

¶ 87    To state a cause of action for negligent misrepresentation, plaintiffs must allege: (1) a false statement of material fact; (2) defendant's carelessness or negligence in ascertaining the truth of the statement; (3) an intention to induce plaintiffs to act; (4) reasonable reliance on the truth of the statement by plaintiffs; and (5) damage to plaintiffs resulting from this reliance. *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15. Further, to plead a cause of action for negligent misrepresentation, plaintiffs must also allege defendant owes a duty to them to communicate accurate information. *Id*.

¶ 88    Plaintiffs' claim of negligent misrepresentation, like their claims for violation of the Consumer Fraud Act, common-law fraud and fraudulent concealment, alleged that the employment information for the 2005, 2007, and 2009 classes contained incomplete, false and misleading information regarding its graduates' employment and salaries for those years and that plaintiffs relied on this information when choosing to enroll and remain enrolled at DePaul. However, as we have discussed repeatedly in this opinion, plaintiffs have failed to adequately allege that DePaul made any incomplete, false or misleading statements in its employment information for the 2005, 2007 and 2009 classes regarding its graduates' employment and salaries for those years, nor have they adequately alleged reasonable reliance, proximate cause or damages. Accordingly, plaintiffs failed to state a cause of action for negligent misrepresentation. We affirm the dismissal of plaintiffs' negligent misrepresentation claim.

¶ 89                                    F. The Dismissal With Prejudice

¶ 90    Plaintiffs contend the circuit court erred in dismissing the entirety of their first-amended class action complaint with prejudice. Plaintiffs request we remand the case so as to provide them with the opportunity to amend their pleadings.

¶ 91    "No absolute right exists for a plaintiff to amend a pleading. [Citation.] The decision whether to grant or deny an amendment rests within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Matanky Realty Group, Inc. v. Katris*, 367 Ill. App. 3d 839, 844 (2006). Plaintiffs here never sought leave to amend their first-amended class action complaint and, accordingly, the circuit court committed no abuse of discretion in dismissing it with prejudice. *Id.* (holding that the circuit court committed no abuse of discretion in dismissing plaintiff's complaint with prejudice "where no exercise of that discretion was requested because the record demonstrates that plaintiff never sought leave to amend its complaint").

¶ 92    For all the foregoing reasons, we affirm the section 2-615 dismissal order. As a result of our disposition of this case, we need not address the section 2-619 dismissal or the other arguments regarding the section 2-615 dismissal.

¶ 93    Affirmed.