THE BOARD OF TRUSTEES OF THE ADDISON FIRE PROTECTION
DISTRICT No. 1 PENSION FUND, Plaintiff-Appellee, v. ZACK STAMP,
Director of the Department of Insurance, Defendant-Appellant.

Second District   No. 2—92—0406

Opinion filed February 23, 1993.

874

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellant.

Thomas J. Riggs, of Addison, and Donovan & Roberts, P.C., of Wheaton (Robert R. Verchota, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, the Director of the Department of Insurance, appeals from a Du Page County circuit court summary judgment and permanent injunction in favor of plaintiff, the Board of Trustees of the Addison Fire Protection District No. 1 Pension Fund. Five general issues confront us: (1) whether a prior declaratory judgment precluded defendant from questioning plaintiff's actions; (2) whether defendant exceeded his authority in questioning plaintiff's actions; (3) whether the injunction was improper because the dispute underlying plaintiff's request for the injunction was not ripe; (4) whether the injunction was improper because plaintiff failed to exhaust administrative remedies; and (5) whether the injunction was improper because plaintiff failed to establish the necessary elements for an injunction.

On August 2, 1989, defendant, Zack Stamp, as Director (Director) of the Department of Insurance (Department), completed an audit of plaintiff board of trustees (Pension Board) of the Addison Fire Protection District No. 1 Pension Fund (Pension Fund). The audit concluded, in relevant part, that plaintiff's inclusion of volunteer time in determining creditable service for firemen for Pension Fund purposes violated section 4—108 of the Illinois Pension Code (Ill. Rev. Stat. 1991, ch. 108½, par. 1—101 et seq.). Section 4—108, as then in effect, stated in relevant part that "[c]reditable service shall not under any circumstances include time spent as a volunteer firefighter, whether or not any compensation was received therefor." Ill. Rev. Stat. 1987, ch. 108½, par. 4—108.

Section 4—108 had been amended effective September 17, 1983. Before then, and as in effect January 1, 1982, section 4—108 did not prohibit credit for service as a volunteer fireman. At that time, the Pension Code defined the term "fireman" to include any person employed in fire service as a fireman whether he served as a de facto or de jure fireman.

Prior to the September 17, 1983, amendment of section 4—108, on August 25, 1983, the Pension Board passed a resolution (Resolution) which provided that certain named fire fighters receive specified service credits for time served as "paid on call" or volunteer firemen. Kenneth Christensen was one of the 11 fire fighters named in the Resolution as entitled to receive such credit. In order to receive credit for volunteer service time, the Resolution required Christensen and the other named fire fighters to make specified contributions to the Pension Fund.

After the Resolution was passed, the then-president of the Pension Board refused to sign the Resolution and on September 1, 1983,

he published a memorandum stating that he refused to sign on the grounds that the Resolution was unauthorized and unlawful. The Pension Board then indefinitely postponed the date for delivery of the contributions required by the Resolution and inquired of the Attorney General whether the Pension Fund could give the firemen named by the Resolution credit for their volunteer time. On April 10, 1984, after section 4—108 was amended to provide that creditable service shall not include time spent as a volunteer fire fighter, the Attorney General of the State of Illinois informally responded, in writing, that the Pension Fund could not credit the volunteer time.

On July 16, 1984, Christensen tendered to the Pension Fund the contribution specified for him by the Resolution and demanded that the Pension Board credit his prior volunteer service. In order to determine the rights of the parties, the Pension Board brought a declaratory judgment action seeking adjudication of whether it could give Christensen credit under the Resolution for his time served as a volunteer fire fighter.

On January 29, 1985, in Board of Trustees of the Addison Fire Protection District No. 1 Pension Fund v. Christensen (Cir. Ct. Du Page County, No. 84—MR—399), the Du Page County circuit court entered a final declaratory judgment. The final judgment provided, *inter alia*: (1) that Christensen was a fireman within the Pension Code definition of fireman while serving in a paid-on-call or volunteer capacity prior to his full-time employment as a fireman and that awarding service credit for such volunteer services did not conflict with the Pension Code; (2) that the Resolution was valid and took effect as of the date of its passage; (3) that the rights of Christensen and the other firemen named by the Resolution were vested and the Pension Board was bound by and could not breach the Resolution terms; and (4) that the Pension Board should credit the volunteer service according to the terms of the Resolution. Each of the firemen named by the Resolution subsequently tendered the appropriate contribution specified by the Resolution and the Pension Board credited each for volunteer time.

On August 15, 1984, after filing the declaratory judgment action, and more than five months before the court entered its final judgment, the Pension Board's attorney sent written notice to the Department of the pending declaratory judgment action and provided the Department copies of the complaint and motion for judgment on the pleadings. The notification, received by the Assistant Deputy Director of the Department, stated in relevant part, "Since the Department has consistently taken a position that credit for volunteer time cannot

be awarded, the Addison Fire Protection District No. 1 Pension Fund has requested that I afford sufficient time to the Department to intervene should they see fit." The Department did not intervene in the declaratory judgment suit.

Nearly five years later, after the Department's August 2, 1989, audit concluded that the Pension Board's actions violated section 4—108, the Pension Board informed the Director that it believed the declaratory judgment mandated its actions with respect to the fire fighters named by the Resolution. The Director then issued a notice to the Pension Board to show cause for noncompliance and scheduled a hearing on the alleged violation of section 4—108 for September 17, 1990.

On August 31, 1990, the Pension Board filed this action in the Du Page County circuit court against the Director seeking a permanent injunction prohibiting the Director and his successors from threatening or demanding that the Pension Board exclude those service credits mandated by the declaratory judgment.

The parties filed cross-motions for summary judgment. On February 27, 1992, the circuit court denied defendant's motion for summary judgment, granted plaintiff's motion for summary judgment, entered judgment in plaintiff's favor, and permanently enjoined defendant from "threatening or demanding that the Plaintiff and its successors and assigns exclude credit for volunteer time for pension purposes as previously awarded and judicially decreed under the Declaratory Judgment dated January 29, 1985." Defendant appeals the decision granting summary judgment and the injunction.

The first issue before us is whether the declaratory judgment precluded defendant from questioning plaintiff's actions. The circuit court based its judgment, in part, on its conclusion that the declaratory judgment mandating crediting of volunteer time for the 11 firemen precluded defendant from questioning the crediting of the volunteer time. The court reached this conclusion even though it recognized that defendant was not a party to the declaratory judgment action and therefore not technically precluded by *res judicata* principles. In reaching this conclusion the court specifically relied on *Williams v. Madison County Mutual Automobile Insurance Co.* (1968), 40 Ill. 2d 404.

In *Williams*, a circuit court granted the motion for dismissal of three of the four named defendants in a declaratory judgment action brought by an automobile insurer to determine the extent of its policy coverage in relation to the defendants. (*Williams*, 40 Ill. 2d at 406.) Our supreme court held that the declaratory judgment had *res judi-*

*cata* effect against the three dismissed defendants and therefore the declaratory judgment precluded the defendants from later proceeding against the insurer. (*Williams*, 40 Ill. 2d at 408.) The supreme court concluded that the circuit court erred when it allowed the defendants to remove themselves as parties from the declaratory judgment action. (*Williams*, 40 Ill. 2d at 408.) The supreme court determined that this error was responsible for the declaratory judgment not being technically *res judicata* as to the dismissed defendants on the ground that they were not parties to the action. *Williams*, 40 Ill. 2d at 408.

Here, the circuit court judgment order stated that the *Williams* rationale "precluding certain parties from questioning the binding effect of a previous declaratory judgment action though not parties to the action" applied to preclude defendant from questioning the declaratory judgment action mandating volunteer credit for the 11 firemen. On appeal, plaintiff essentially concedes that neither *res judicata* nor collateral estoppel precludes defendant from questioning the binding effect of the declaratory judgment action because defendant was not a party to or in privity with a party to the declaratory judgment action. Nonetheless, plaintiff contends that the *Williams* principles should apply by analogy because defendant chose not to intervene in the declaratory judgment action. Defendant maintains that *Williams* was based on principles of equitable estoppel and that *Williams* does not apply to him because, unlike the *Williams* plaintiff, plaintiff here did not name defendant as a party in the declaratory judgment action and unlike the *Williams* defendants, defendant here was not in a position to take action either legally or equitably equivalent to the action taken by the dismissed *Williams* defendants. Defendant further contends that he is not required to intervene in suits seeking construction of statutes and that equitable estoppel is not applicable to him if he does not intervene. Finally, defendant contends he can only be estopped under compelling circumstances and that there are no compelling circumstances here.

■ We agree with the circuit court and the parties that neither *res judicata* nor collateral estoppel applies in this case to preclude defendant from questioning the crediting of volunteer time to the 11 firemen. Here, defendant was neither a party nor in privity with a party, and both *res judicata* and collateral estoppel only apply to later actions between the same parties or their privies. (*Simcox v. Simcox* (1989), 131 Ill. 2d 491, 496-97.) Accordingly, the question before us is whether equitable estoppel precludes defendant from questioning the crediting of volunteer time to the 11 firemen.

■ Equitable estoppel is a doctrine developed in equity to prevent a party from asserting rights where the assertion of those rights would work a fraud or injustice on another party. (*Launius v. Najman* (1984), 129 Ill. App. 3d 498, 504.) The test to determine whether to apply equitable estoppel is whether, considering all the circumstances of the particular case, conscience and honest dealing require estoppel. *Carey v. City of Rockford* (1985), 134 Ill. App. 3d 217, 218.

■ However, only compelling circumstances allow the application of equitable estoppel against the State. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 448.) Generally, mere inaction by the State is insufficient to invoke equitable estoppel. (*Pavlakos v. Department of Labor* (1985), 111 Ill. 2d 257, 265.) Thus, equitable estoppel applies against the State only where some positive acts by State officials may have induced actions by an adverse party where it would be inequitable to hold the adverse party liable for its actions. *Jack Bradley, Inc. v. Department of Employment Security* (1991), 146 Ill. 2d 61, 81.

■ Here, there were no positive acts by the State which might have induced plaintiff's actions. It may be inequitable to subject plaintiff to administrative review of its actions by defendant when plaintiff invited defendant to intervene in the declaratory judgment action, defendant did not intervene, and plaintiff later relied on the declaratory judgment. However, defendant took no positive action by merely not intervening, and defendant therefore cannot be estopped. Accordingly, we find that the circuit court erred when it concluded that the *Williams* rationale precluded defendant from questioning plaintiff's allocation of volunteer time. Based on the foregoing, we hold that estoppel did not apply in this case to preclude the Department from questioning plaintiff's actions.

Preclusion notwithstanding, plaintiff asserts that *Board of Trustees of the Police Pension Fund v. Washburn* (1987), 153 Ill. App. 3d 482, is dispositive of this case. Plaintiff contends that, just as in *Washburn*, defendant exceeded his authority to question plaintiff's actions because those actions were administrative decisions. Defendant disagrees.

In *Washburn*, plaintiff, a police pension fund board of trustees, denied a pensioner's request for retroactive pension benefits after the police pension fund board met and erroneously concluded and found that it did not have statutory authority to grant the retroactive payment. (*Washburn*, 153 Ill. App. 3d at 484.) More than 2½ years later, defendant, the Director of the Department of Insurance, audited the pension fund and determined that plaintiff had violated certain sec-

tions of the Illinois Pension Code when it failed to make the retroactive payment. (*Washburn*, 153 Ill. App. 3d at 484.) After defendant ordered plaintiff to make the retroactive payment and plaintiff refused on the ground that it did not have statutory authority, defendant issued to plaintiff a notice of hearing for noncompliance. (*Washburn*, 153 Ill. App. 3d at 484.) Plaintiff sought declaratory relief and the circuit court granted plaintiff's motion for summary judgment "finding that defendant had no statutory authority or subject matter jurisdiction to review plaintiff's decisions." (*Washburn*, 153 Ill. App. 3d at 484.) Defendant appealed.

On appeal in *Washburn*, this court addressed the issue of whether defendant had the power under section 22—502 of the Illinois Pension Code to review and reverse the result of the declaratory judgment action. Contrary to defendant's contention that he was merely reviewing the policies of plaintiff, this court found that defendant was in fact reviewing an administrative decision made by plaintiff and concluded that defendant did not have the power to review administrative decisions made by a pension board under the Administrative Review Law. (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*; *Washburn*, 153 Ill. App. 3d at 486.) The court stated that "[a]n agency's policies which are considered such, are not within the circuit court's subject matter; however, when an agency's policies are involved in deciding the rights of an individual, such policies become part of its 'administrative decisions' and consequently, under the Administrative Review Law, are reviewable solely by the court." *Washburn*, 153 Ill. App. 3d at 486-87.

Here, defendant, like the *Washburn* defendant, maintains that section 22—502 of the Illinois Pension Code gives him the authority to review plaintiff's actions. Defendant concedes that *Washburn* prohibits him from reviewing a pension board's administrative decisions, but argues that *Washburn* does not apply here because plaintiff's actions in this case did not involve administrative decisions, only reviewable policies. Plaintiff contends that defendant is seeking to exceed his statutory authority and subject-matter jurisdiction to reverse administrative decisions affecting the rights of individuals under the guise of using his statutory authority to review policy. Thus, the issue before us is whether plaintiff's actions in this case involved administrative decisions and were, therefore, under *Washburn*, beyond defendant's statutory scope of review or whether plaintiff's actions involved policy and were therefore subject to defendant's review.

■ The Administrative Review Law, which governs the Pension Board, defines the term "administrative decision" as follows:

" 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." (Ill. Rev. Stat. 1991, ch. 110, par. 3—101.)

Generally, judicial review of an agency action can only occur where there has been a final agency determination which usually follows some sort of adversarial process involving the parties affected, a hearing on the controverted facts, and an ultimate disposition rendered by an impartial fact finder. *Jagielnik v. Board of Trustees of the Police Pension Fund* (1991), 211 Ill. App. 3d 26, 32.

Here, Christensen, an individual whose rights stood to be affected by a decision on the matter, demanded that the Pension Board credit his prior service as a volunteer fireman toward his total creditable service time in the Pension Fund. This required the Pension Board to make a decision on the matter. However, the Pension Board wanted further input in construing the governing statute and sought a declaratory judgment on the matter.

A declaratory judgment is an optional remedy which is proper for the resolution of an actual controversy even though other relief, such as an administrative hearing, could be obtained. (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 306.) A declaratory judgment is an appropriate means to resolve a controversy related to statutory construction or interpretation. *Office of Lake County State's Attorney v. Illinois Human Rights Comm'n* (1990), 200 Ill. App. 3d 151, 155.

A declaratory judgment by its very nature determines and fixes the rights of the respective parties. (*Boles Trucking, Inc. v. O'Connor* (1985), 138 Ill. App. 3d 764, 771.) The Declaratory Judgment Act states that a

"court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, *** and a declaration of the rights of the parties interested." (Ill. Rev. Stat. 1991, ch. 110, par. 2—701.)

Thus, a declaratory judgment has the force of a final judgment with respect to the rights of the parties subject to the declaratory judgment.

■ Here, the circuit court entered a declaratory judgment which construed the Pension Code to allow crediting volunteer time for the named firemen. The declaratory judgment thus specifically defined the rights of Christensen and the other volunteer firemen with respect to the crediting of their volunteer time under the Pension Code. The declaratory judgment ordered the Pension Board to give credit for volunteer time to Christensen and each of the other firemen named by the Resolution who tendered the required payment. The Pension Board subsequently awarded credit for volunteer time in each case.

We find that the entire administrative process initiated by plaintiff in this case, including the declaratory judgment action brought by plaintiff, was tantamount to an administrative decision. Faced with the duty to make a decision with respect to crediting volunteer time in each of the particular cases of the firemen named by the Resolution, plaintiff brought a declaratory judgment action to construe the relevant section of the Pension Code. The declaratory judgment determined the legal rights of each of the individual firemen. All that remained to be done in each case was for each individual fireman to make a timely tender to plaintiff of the contribution designated in the Resolution. Crediting the volunteer time in each case essentially terminated the proceedings before plaintiff.

Contrary to defendant's assertions, the fact that the actual crediting of total time served by each fireman may not be determined until each fireman retires does not affect the vested rights of each fireman to credit for his volunteer time as established by the declaratory judgment. The administrative decision process which determined the rights of each of these firemen and included a final judgment in the form of a declaratory judgment does not become a "policy" reviewable by the Department simply because the rights established by the administrative decision may not be asserted until some time in the future. As we have previously cautioned, "[t]o allow defendant, under the guise of reviewing policy, to examine individual adjudicative decisions of the board and to reverse or modify that decision if he disagrees with the determination made in that proceeding, would be to create in essence an unconstitutional court of administrative review." (*Washburn*, 153 Ill. App. 3d at 487.) Here, as in *Washburn*, defendant did not order plaintiff to change a policy, but sought to reverse the adjudicatory decisions themselves. Because this administrative action is beyond the authority delegated to the defendant by the Pension Code, it is therefore void. *Rossler*

*v. Morton Grove Police Pension Board* (1989), 178 Ill. App. 3d 769, 773.

Based on the foregoing, we conclude that the circuit court did not err in granting plaintiff's motion for summary judgment.

▇ The next issue before us is whether the circuit court erred in issuing a permanent injunction against defendant. Defendant contends that the circuit court erred in issuing the injunction because the dispute was not ripe, plaintiff failed to exhaust its administrative remedies, and plaintiff failed to establish some essential elements of an injunction action.

We turn first to defendant's assertion that plaintiff's injunction action was not ripe. The purpose of the ripeness doctrine in the context of challenges to administrative action " 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 546, quoting *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148-49, 18 L. Ed. 2d 681, 691, 87 S. Ct. 1507, 1515.) The test for ripeness focuses on an evaluation of the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. (*Big River Zinc Corp. v. Illinois Commerce Comm'n* (1992), 232 Ill. App. 3d 34, 39.) A statute or regulation is ripe for challenge when the challenger must choose between disadvantageous compliance and risk of sanction. *On-Line Financial Services, Inc. v. Department of Human Rights* (1992), 228 Ill. App. 3d 99, 102.

Here, the issue was clearly defined, and not abstract. The question before the court was whether a prior decision construing the statute relied upon by defendant for his authority was dispositive of this case. If the court determined that *Washburn* was dispositive, then defendant was without jurisdiction to question plaintiff's actions. We find that this dispute was fit for judicial decision. Plaintiff was faced with the possibility of sanctions if it failed to show cause as defendant demanded and the possibility of contempt citations for failure to follow the declaratory judgment if it complied with defendant's demands. We find that plaintiff was faced with great hardship if a judicial decision was withheld. Thus, plaintiff's statutory challenge satisfied the tests for ripeness and was ripe for judicial review.

Defendant next argues that the circuit court erred in issuing an injunction against him because plaintiff failed to exhaust its administrative remedies before bringing the injunction action. Under the exhaustion of remedies doctrine, parties aggrieved by the action of an administrative agency generally cannot seek judicial review of the agency action without pursuing all administrative remedies available, such as a hearing to show cause. (*Phillips v. Graham* (1981), 86 Ill. 2d 274, 289.) The purposes of the exhaustion of remedies doctrine are: to allow the administrative agency to develop fully and consider the facts of the cause before it; to allow the agency to utilize its expertise; and to allow the aggrieved party an opportunity to succeed before the agency so that judicial review is unnecessary. *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 308.

While strict compliance with the doctrine of exhaustion of remedies is usually required, exceptions to the exhaustion rule have been allowed where the agency cannot provide an adequate remedy or where it is patently futile to seek relief from the agency; where no issues of fact are involved or agency expertise is not required; where irreparable harm will result from further pursuit of administrative remedies; or where the agency's jurisdiction is attacked on the ground that it is not authorized by statute. *Castaneda*, 132 Ill. 2d at 309.

Each of these exceptions applies in this case. Although a party cannot avoid the exhaustion requirement merely because relief may be, or even probably will be, denied by the agency, the futility doctrine is applied on a case-by-case basis. (*Constantine v. Village of Glen Ellyn* (1991), 217 Ill. App. 3d 4, 15.) Here, defendant's very act of scheduling a hearing to show cause in view of its historic position against crediting volunteer time for firemen reflects a judgment by defendant that plaintiff's actions were improper. To compel plaintiff to seek relief from defendant in the face of defendant's demonstrated position would be patently futile and would delay the administration of justice. This conclusion is buttressed by the clear showing of the record here that there are no issues of fact involved nor is agency expertise required. The province of statutory interpretation belongs specifically to the courts, which have their own expertise in statutory construction. An additional reason for allowing an exception to the exhaustion rule in this case is the possibility of irreparable harm to plaintiff if it pursued its administrative remedies. Such harm might have occurred when plaintiff was faced with a decision either to abide by defendant's likely negative ruling

and face sanctions or to disobey the mandate of the declaratory judgment and face possible contempt charges. Finally, an exception is warranted here because plaintiff, in relying on *Washburn,* specifically challenged defendant's jurisdiction as not authorized by statute. For all these reasons we conclude that the trial court did not err in failing to observe the exhaustion doctrine when it heard plaintiff's request for an injunction.

The last issue before us is whether the trial court erred when it issued the permanent injunction because plaintiff did not establish the necessary elements for an injunction. Defendant maintains that plaintiff did not establish the necessary elements of inadequate remedy at law and irreparable harm. Defendant argues that participation in the administrative review process would provide plaintiff with an adequate remedy at law and that such participation would not constitute a sufficient basis for a claim of irreparable harm.

Although an injunction is an extraordinary remedy, a circuit court has broad discretionary powers to grant an injunction. (*Tamalunis v. City of Georgetown* (1989), 185 Ill. App. 3d 173, 189.) A reviewing court will only overturn a circuit court's grant of an injunction where there has been a manifest abuse of discretion. *Tamalunis,* 185 Ill. App. 3d at 189.

We find·that the circuit court did not abuse its discretion in this case. Because defendant's action was void, plaintiff did not have an adequate remedy at law in pursuing the administrative process. Plaintiff also faced irreparable harm in the form of possible contempt if it did not follow the declaratory judgment. We find that plaintiff established a threat of irreparable harm and the lack of an adequate remedy at law.

For the above reasons, we conclude that the circuit court did not err when it issued a permanent injunction against defendant.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.