2023 IL App (1st) 220899-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
April 25, 2023

No. 1-22-0899

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| CHI AROME, LLC, BLACK MARKET EXTREME, LLC, QUREBLISS, LLC, and WONG & ZARATE LLC, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 21 CH 5376 |
| ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION and BRET BENDER, in his capacity as Deputy Director, | ) ) ) ) | The Honorable Caroline Kate Moreland, Judge Presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* Trial court's dismissal for lack of subject matter jurisdiction of complaint for declaratory judgment by unsuccessful applicants for cannabis dispensary licenses is affirmed, where applicants failed to file timely claim for administrative review.

¶ 2    The plaintiffs, Chi Arome, LLC, Black Market Extreme, LLC, Qurebliss LLC, and Wong & Zarate LLC, appeal the trial court's dismissal of their complaint for declaratory judgment filed against the defendants, the Illinois Department of Financial and Professional Regulation (Department) and its deputy director, Bret Bender. The trial court dismissed the complaint on the

basis that the plaintiffs' action involved review of a final decision of an administrative agency, that it was not commenced within 35 days of the agency's decision as required by section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2020)), and that therefore it was not an action over which the trial court had subject matter jurisdiction. We affirm the trial court's order.

¶ 3                                I. BACKGROUND

¶ 4                          A. Dispensary Licensing Process

¶ 5        The plaintiffs are four limited liability companies that submitted applications for conditional adult use dispensing organization licenses following the enactment of the Cannabis Regulation and Tax Act, 410 ILCS 705/1-1 *et seq.* (West 2020) (Cannabis Act). The Department is responsible under the Cannabis Act for enforcing its provisions concerning the licensing of operators of cannabis dispensaries. *Id.* § 5-15. The Cannabis Act provides for several kinds of licenses, with the one at issue in this case being the "Conditional Adult Use Dispensing Organization License." This is a preliminary form of license that does not entitle the recipient to begin purchasing or selling cannabis products, but rather it reserves the right to a full license if the applicant meets certain conditions described in the Cannabis Act. *Id.* §§ 1-10, 15-25. Unless otherwise indicated, we will refer to this simply as the "license."

¶ 6        As part of the Cannabis Act, the General Assembly established a "social equity program," with the goal of ensuring that the legalization of recreational cannabis would help to remedy harms to those communities and individuals who had most directly experienced the adverse impacts of past enforcement of drug-related laws, including cannabis laws. *Id.* § 7-1. Part of the social equity program involved providing "license application benefits to individuals most directly and adversely impacted by the enforcement of cannabis-related laws who are interested in starting cannabis business establishments." *Id.* § 7-1(h). Generally speaking, a license applicant qualifies

as a "Social Equity Applicant" if a certain percentage of its ownership or staff had been arrested or convicted for expungible cannabis-related offenses or resided in communities that have been disproportionately impacted by poverty and the past enforcement of cannabis laws. *Id.* § 1-10.

¶ 7        Initially, the Cannabis Act authorized the Department to issue up to 75 licenses, to be awarded within 17 geographic areas according to the area's percentage of the state's total population. *Id.* § 15-25(a), (c). It established an application deadline of January 1, 2020, and set forth various requirements that an application must satisfy. *Id.* §§ 15-25(b), (d). It also set forth a rubric of criteria by which the Department was to evaluate and score applications, with 252 points being the top score potentially available. *Id.* § 15-30(c), (d). According to this scoring rubric, 15 points could be awarded for a suitable employee training plan; 65 points for a security and recordkeeping plan; 65 points for the applicant's business plan, financials, operating and floor plan; 30 points for demonstration of knowledge and experience; 50 points for meeting the qualifications of a "Social Equity Applicant;" 5 points for labor and employment practices; 5 points for an environmental plan; 5 points for having at least 51% ownership by an Illinois resident; 5 points for having 51% ownership by veterans; and 5 points for a diversity plan. *Id.* § 15-30(c). Finally, 2 bonus points could be awarded for a plan to engage with the community, bringing the total available points to 252. *Id.* § 15-30(d). The statute also provided that if the Department received an application that failed to provide the required elements, it shall issue a "deficiency notice" to the applicant, when then has 10 days to resubmit the incomplete information. *Id.* § 15-30(b).

¶ 8        According to the plaintiffs, the Department received approximately 4000 applications for the 75 licenses. It hired the accounting firm KPMG to review and score the applications it received. On September 3, 2020, the Department issued a notice that the scoring process had resulted in 21 "tied applicants" receiving top scores of 252 points in each of the 17 regions. The notice stated

that, provided other qualifications were satisfied, these entities would be eligible for participation in a lottery, through which the available licenses would be issued in each region. See 68 Ill. Admin. Code § 1291.50 (eff. Aug. 24, 2020) (establishing tied-applicant lottery by rule). The issuance of this notice resulted in various complaints, including the filing of multiple lawsuits against the Department concerning the issuance of deficiency notices and problems with its scoring process.

¶ 9     In response, on September 22, 2020, the Department issued a further notice stating that, in light of the issues that had been raised about the deficiency notices and its scoring process, it had determined that issuing licenses based on the current scores would undermine confidence in the dispensary licensing process. It stated that providing an additional opportunity to cure deficiencies would ensure fairness. The Department thus announced that it would provide applicants with "supplemental deficiency notices," which would give applicants that had not received the maximum number of points on any exhibit 10 days to submit an amended exhibit or request that the Department re-review an original exhibit for potential scoring errors.

¶ 10    None of the four plaintiffs were among the 21 "tied applicants" that received top scores according to the Department's notice of September 3, 2020. However, each plaintiff received a supplemental deficiency notice from the Department in February 2021. Each plaintiff then corrected the deficiencies in its respective application and ultimately received a notification in July 2021 that it had obtained a perfect score of 252.

¶ 11    While the supplemental deficiency notice process was ongoing, the General Assembly made several pertinent amendments to the Cannabis Act. See Pub. Act 102-98 (eff. July 15, 2021). First, it codified the tied-applicant lottery (which had previously been authorized only under a Department rule), and it provided for 110 more licenses to be awarded via two new lotteries, the "Qualifying Applicant Lottery" and the "Social Equity Justice Involved Lottery," with 55 licenses

to be awarded in each. See *id.* (enacting 410 ILCS 705/15-30.20, 15-35.10 and amending 410 ILCS 705/1-10, 15-35).

¶ 12    The tied-applicant lottery was limited to previous applicants that had received top scores of 252 following the supplemental deficiency notice process. See 410 ILCS 705/1-10, 15-30.20 (West Supp. 2021); 68 Ill. Admin. Code § 1291.50 (eff. Aug. 24, 2020). Eligibility for both the Qualifying Applicant Lottery and the Social Equity Justice Involved Lottery required that a previously submitted application receive at least 85% of 250 points and that the applicant meet the criteria of a Social Equity Applicant, with the latter lottery limited to applicants that qualified as a Social Equity Applicant through the makeup of their ownership, not their employees. See 410 ILCS 705/1-10 (definitions), 15-35, 15-35.10. In accordance with the criteria it established for the two new lotteries, the General Assembly also amended the definition of "Conditional Adult Use Dispensing Organization License" to delete mention of it being a license awarded to "top scoring" applicants. See Pub. Act 102-98 (eff. July 15, 2021) (amending 410 ILCS 705/1-10).

¶ 13    The Department conducted the three lotteries in July and August 2021. All four of the plaintiffs satisfied the criteria to participate in all three lotteries, and they all did so. However, none of the plaintiffs were successful in obtaining licenses through any of the lotteries.

¶ 14    The Department announced the results of the three lotteries on September 3, 2021. Its notice doing so was titled "Final Administrative Decision" and stated that it was "the Department's final administrative decision regarding applications for [licenses] under Sections 15-25 through 15-35.10 of the [Cannabis Act]." The notice further stated, "Pursuant to Section 15-175(a) of the [Cannabis Act], this Final Administrative Decision is subject to judicial review under the Administrative Review Law, 735 ILCS 5/3-102. Accordingly, applicants have until October 8, 2021 to file any claims for judicial review, which is 35 days from the Final Administrative

Decision of September 3, 2021."

¶ 15                              B. Plaintiffs' Complaint for Declaratory Judgment

¶ 16        Although other unsuccessful applicants filed claims for administrative review by October 8, 2021, the instant plaintiffs did not.[1] Instead, on October 20, 2021, they filed a complaint for declaratory judgment against the Department and its deputy director, which is the subject of the instant appeal. The complaint begins by largely setting forth the licensing process described above. According to the complaint, each of the four plaintiffs submitted timely applications for licenses in the Chicago/Naperville/Elgin area, where 47 licenses were available. Each plaintiff qualified as "Social Equity Applicant."

¶ 17        Plaintiff Chi Arome alleges that it never received an initial deficiency notice despite not being among the first 21 tied applicants with perfect scores. It alleges that after it received a supplemental deficiency notice in February 2021, it corrected the one-point deficiency and thereafter received a perfect score of 252.

¶ 18        Plaintiff Black Market Extreme alleges that after the Department announced the initial list of tied applicants in September 2020, it requested a copy of its score and discovered various exhibits for which it did not receive a full score. However, none of these deficiencies had been identified in the initial deficiency notice that the Department had sent to it in April 2020. It also alleges that it later received a supplemental deficiency notice in February 2021, which identified different deficiencies, as well as a different total score. It alleges that it corrected all identified deficiencies and thereafter received a perfect score of 252.

¶ 19        Plaintiff Qurebliss alleges that it submitted timely applications for two licenses, one in the

---

[1] Most statewide claims for administrative review were consolidated into In re Cannabis Dispensary Litigation, No. 21-CH-3730 (Cir. Ct. Cook County).

Chicago/Naperville/Elgin region and one in the Peoria region. It alleges that the applications it submitted were identical for both regions, yet it was given a top score of 252 on only the application for the Chicago/Naperville/Elgin region.

¶ 20    Plaintiff Wong & Zarate alleges that it submitted an application, received a supplemental deficiency notice, and provided additional information to the Department. By the e-mail of July 28, 2021, it was notified that it had received a top score of 252 on one application only.

¶ 21    In summary, the plaintiffs' complaint alleges that the Department's process for determining who should receive licenses was "highly flawed." It alleges that the process "failed to promote social justice equity or reform and should be declared invalid by this court as a violation of Plaintiffs' constitutional rights." It identifies the flaws in the process for awarding the licenses under four headings: (1) "Errors in Scoring and Processing," (2) "Bias," (3) "The Department Did Not Follow the Law," and (4) "Notice or Administrative Hearing Procedure Not Provided."

¶ 22    Under the heading "Errors in Scoring and Processing," the complaint alleges two main problems. The first is that plaintiff Qurebliss submitted two identical applications, each of which received different scores from the Department. The second problem identified is that six applicants (none of which are the plaintiffs here) were initially assigned a certain number of entries into the lotteries, and the number of entries was later reduced. By contrast, one entity (also not one of the plaintiffs) was initially assigned one entry into the lottery, which was later adjusted to two entries. It further alleges that additional errors were made by the Department that are unknown to the plaintiffs as a result of the failure to provide transparency to the applicants in the lottery process.

¶ 23    Under the heading "Bias," the complaint identifies four problems. First, it alleges that explicit bias occurred in the supplemental deficiency notice process because the Department's instructions stated that an unless an applicant's original application satisfied the requirements to receive points

for having 51% ownership by Illinois residents and veterans or for being a Social Equity Applicant, this could not be corrected as part of the supplemental deficiency notice process. Accordingly, the complaint alleges, applicants whose applications received top scores prior to the supplemental deficiency notice process "were given preferential treatment by the Department," whereas those who did not "were subjected to a strict audit and given stricter limitations by the Department."

¶ 24     The second allegation under the heading "Bias" is that those applicants who had sufficient money were allowed to pay multiple application fees to receive multiple entries into the lotteries and therefore had better chances of winning. The third allegation of bias is that some applicants were given an unfair advantage because "they were given more entries in the lottery than they paid and made application for." It identifies four such entities who were allegedly given this unfair advantage. The fourth and final allegation of bias involves the Department's alleged preferential treatment of a non-party entity named EHR Holdings, LLC, which was one of the 21 applicants who received top scores prior to the supplemental deficiency notice process. In summary, the complaint alleges that EHR Holdings had a change in its ownership that should have caused its application to be subjected to greater scrutiny than it was, particularly with its qualification to receive points as a Social Equity Applicant and for having veteran ownership. It also alleges that one of the members of EHR Holdings was a consultant for KPMG, which graded the applications.

¶ 25     Under the heading "The Department Did Not Follow the Law," the complaint alleges that the Department failed to follow its own rules that licenses be issued to "top scoring" applicants, because applications that had received scores of 213 and above were allowed to compete in the Qualifying Applicant Lottery along with those that had received scores of 252. The complaint alleges that this "significantly lowered the Plaintiffs' chances in each lottery." Second, it alleges that the Department failed to follow the law by making the status of having 51% ownership by

Illinois residents and veterans, along with the status of having a community plan for social reform, mandatory as opposed to optional. The complaint alleges that these are not mentioned in the Cannabis Act as mandatory requirements. Third, the complaint alleges that, based on the published results of the lotteries, the process allowed at least one applicant to be awarded 19 licenses when the law allowed a maximum of 10. Finally, the complaint alleges that the Department failed to inspect the records of applicants to confirm that these applicants "truly" qualified as Social Equity Applicants.

¶ 26   Last, under the heading "Notice or Administrative Hearing Procedure Not Provided," the complaint alleges that the Department's process resulted in the plaintiffs being "denied any post hearing procedure to challenge the decisions pursuant to the Final Decision, absent filing a lawsuit."

¶ 27   After setting forth the background allegations above, the complaint then seeks to have the court grant a declaratory judgment that the Department's licensing process is invalid based on three constitutional theories: violation of procedural due process, substantive due process, and equal protection. Its count I.A, asserting a procedural due process claim, alleges that the Department has not offered the plaintiffs a hearing or afforded the plaintiffs any procedure at the agency level to challenge their failure to receive licenses. The complaint alleges that each of the four plaintiffs has a valid property interest in obtaining a license, and each plaintiff is being deprived of that property interest without the constitutional right to contest the Department's process, including its scoring system and final scoring decisions.

¶ 28   Count I.B of the complaint, asserting a substantive due process claim, alleges that the plaintiffs have a fundamental right to a fair scoring and decision-making process for the issuance of social equity licenses under the Cannabis Act. It alleges that the state's interest is in assisting

Social Equity Applicants by providing a lower barrier of entry to ownership and to promote hiring in socially impacted areas. It alleges that the legislature's intent was to promote social justice equity, yet the winners of the three lotteries are not the product of a process that reflects that intent.

¶ 29    Count II of the complaint asserts equal protection claims. It alleges that the Department failed to treat equally the original 21 applicants who received top scores prior to the issuance of supplemental deficiency notices and those applicants who did not, including the plaintiffs. It alleges that those who initially received top scores were treated "without error and above additional scrutiny," while plaintiffs and others who responded to the supplemental deficiency notices were required to undergo additional scrutiny that could have resulted in their disqualification from the lotteries. The complaint further alleges that the Department "should have treated the Tied-Applicant lottery winners and other 2 ([Qualifying Applicant] and [Social Equity Justice Involved]) lottery winners equally but did not." It alleges this unequal treatment resulted in the violation of the plaintiffs' equal protection rights.

¶ 30    Count II further alleges that the plaintiffs suffered purposeful discrimination by the Department, as the mandatory requirement of 51% veteran ownership intentionally disenfranchised Social Equity Applicants. It alleges that the Department essentially forced applicants to enter into agreements that "may not always be beneficial" or to "sacrifice part of their identity just to meet the required number of points for the lotteries." It alleges that this also is a violation of the plaintiffs' equal protection rights.

¶ 31    The complaint's prayer for relief seeks a declaratory judgment that (1) the Department cannot issue licenses to the current lottery winners based on the current lottery results because the process resulted in too many known and likely unknown errors, which subverted the intent and purposes of the Cannabis Act; (2) the Department failed to perform its duties as outlined in the Cannabis

Act or acted beyond its authorized and lawful duties in processing and scoring applications to determine final lottery applicants and winners; (3) the results of the three lotteries will not be upheld and are invalid because the Department's process in selecting the license winners was flawed, biased, and unfair to the plaintiffs; and (4) the Cannabis Act and the Department's licensing process is invalid as it related to the issuing of the licenses at issue and is unconstitutional as it resulted in a violation of the plaintiffs' due process and equal protection rights.

¶ 32                                C. Department's Motion to Dismiss

¶ 33        On December 22, 2021, the Department filed a motion to dismiss the plaintiffs' complaint. Its primary argument was that the relief sought by the plaintiffs was only available in a claim brought under the Administrative Review Law (735 ILCS 5/3-101 (West 2020)), and the plaintiffs had failed to comply with the 35-day limitation period for filing an action for administrative review over which the trial court could have had subject matter jurisdiction. Alternatively, it argued for dismissal on the bases that the plaintiffs had failed to name as necessary parties the other applicants for licenses whose rights would be directly affected by the relief that the plaintiffs sought, as well as the failure to state viable claims for violations of constitutional rights.

¶ 34        The plaintiffs filed a response, in which they argued that the Administrative Review Law did not apply. They argued that they had a right to bring a declaratory judgment action against the Department "to challenge the constitutionality of [its] actions, process, and policies applicable to the Licensing process," and the trial court had subject matter jurisdiction over such a claim. They argued that they were not seeking judicial review of an administrative decision, but instead that their complaint "challenges the validity of certain processes, rules, regulations, standards and/or statements of policy by [the Department] that [it] generally applied to implement [the] licensing process under the [Cannabis Act]." They also argued that the policies they were challenging were

not "final administrative decisions" for purposes of administrative review.

¶ 35                                 D. Trial court's order

¶ 36        On May 18, 2022, the trial court entered an order dismissing the plaintiffs' complaint with prejudice. It reasoned that the plaintiffs' claims, which were directed at problems with the Department's process for issuing licenses and sought to nullify its final decision awarding those licenses, were claims that the plaintiffs were required to have pursued in the context of an action under the Administrative Review Law. This was an aspect of the plaintiffs' duty to exhaust their administrative remedies, which could be circumvented only if they were challenging the Department's authority to issue dispensary licenses or challenging the validity of the statute on its face. However, the court recognized that, by the plaintiffs' own admission, they were not challenging the Department's authority to issue licenses, merely the process by which it did so. Further, the court found that, although the plaintiffs stated that their claim was a facial challenge to the constitutionality of the Cannabis Act, their challenge merely "focuses on factual issues with the administration of the licensing process" which could be properly considered only as part of an administrative review claim. Accordingly, the trial court found that, while the plaintiffs raised claims that could have been considered in a timely-filed action for administrative review, the trial court lost subject matter jurisdiction to do so on October 8, 2021, which was 35 days after the Department issued its decision. As the plaintiffs' complaint was not filed until October 20, 2021, the trial court dismissed it as untimely. This appeal then followed.

¶ 37                                    II. ANALYSIS

¶ 38        This appeal involves the propriety of a trial court's involuntary dismissal of a complaint on the grounds that the court "does not have jurisdiction of the subject matter of the action." 735 ILCS 5/2-619(a)(1) (West 2020). Whether a trial court has subject matter jurisdiction over a claim is a

question of law that we review *de novo*. *McCormick v. Robertson*, 2015 IL 118230, ¶ 18.

¶ 39    Illinois circuit courts are generally presumed to have subject matter jurisdiction, but this presumption is not applicable in cases involving action by administrative agencies. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 14. Instead, the Illinois Constitution provides that circuit courts only have power to review administrative action "as provided by law." Ill. Const. 1970, art. VI, § 9. To that end, section 15-175(a) of the Cannabis Act provides that all final administrative decisions of the Department are subject to judicial review under the provisions of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020)). 410 ILCS 705/15-175(a) (West 2020); see also *id.* § 55-55 (same). In turn, the Administrative Review Law provides that it "shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions" of the Administrative Review Law. 735 ILCS 5/3-102 (West 2020).

¶ 40    Where the Administrative Review Law is applicable and provides a remedy, circuit courts may not redress the parties' grievances through other types of actions. *Dubin v. Personnel Board of the City of Chicago*, 128 Ill. 2d 490, 498 (1989); *Goral v. Dart*, 2020 IL 125085, ¶¶ 34, 40; *Canel v. Topinka*, 212 Ill. 2d 311, 321 (2004). Where a final agency decision has been rendered and the circuit court may grant the relief that a party seeks in the context of reviewing that decision, a circuit court has no authority to entertain independent actions regarding the actions of an administrative agency. *Dubin*, 128 Ill. 2d at 499; accord *Goral*, 2020 IL 125085, ¶ 40. The Administrative Review Law is designed " 'to channel into a single procedure the judicial review of the decisions made by administrative agencies in particular cases.' " *Marsh v. Illinois Racing Board*, 179 Ill. 2d 488, 493 (1997) (quoting *People ex rel. Naughton v. Swank*, 58 Ill. 2d 95, 102

(1974)). The exhaustion of remedies doctrine, which provides that a party aggrieved by administrative action must first pursue all available remedies before resorting to the court, also precludes review in independent actions where the Administrative Review Law provides a remedy. *Poindexter v. State ex rel. Department of Human Services*, 229 Ill. 2d 194, 207 (2008); see also *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 551 (1999) ("exhaustion doctrine includes administrative review in the circuit court").

¶ 41        In this case, the plaintiffs acknowledge that their complaint does not present a timely claim for administrative review. See 735 ILCS 5/3-103 (West 2020) (actions to review a final administrative decision must be filed within 35 days from the date of service of the decision being reviewed). However, they argue that they have purposefully avoided filing a claim involving the review of a final decision of an administrative agency and that for this reason, the Administrative Review Law and its 35-day limitation period does not apply in this case.

¶ 42        The plaintiffs' principal argument on appeal is that their claim is brought under the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2020)) and that subject matter jurisdiction is proper under that statute. The Administrative Procedure Act sets forth requirements for the promulgation of rules by administrative agencies. *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 8. The gist of the plaintiffs' argument on appeal is that the Cannabis Act authorized the Department to adopt rules pursuant to the Administrative Procedure Act, which inherently required it to follow applicable rulemaking procedures. See 410 ILCS 705/55-35(a), (c) (West 2020); 410 ILCS 705/15-35(a-5), 15-35.10(a-5) (West Supp. 2021). They contend that the Department administered the licensing process without promulgating adequate rules to do so, and that for this reason, either its actions were unauthorized or the licensing program is invalid as improperly administered. Most pointedly, they complain of a lack of adopted

rules for the supplemental deficiency notice process, inasmuch as it was conducted by e-mail and announced on the Department's website, allowed for the re-review only of some applications, and "changed the competition mid-stream and altered all applicants' chances" to receive a license. They further rely on section 5-150(a) of the Administrative Procedure Act (5 ILCS 100/5-150(a) (West 2020)), which authorizes agencies to provide by rule for declaratory judgment rulings.

¶ 43    In response, the Department argues that the plaintiffs have forfeited any argument that subject matter jurisdiction exists under the Administrative Procedure Act because they failed to raise this argument in the trial court. The Department further argues that, even if this argument is not forfeited, it lacks merit because the plaintiffs' complaint does not mention the Administrative Procedure Act or allege that it was violated.

¶ 44    We agree with the Department that the plaintiffs have forfeited this argument. A reviewing court will not consider on review issues or arguments that were not presented to or considered by the trial court. *Grimes v. Sage Telecom Communications, LLC*, 2018 IL App (1st) 171455, ¶ 23. Where aspects of the arguments raised on appeal are sufficiently distinct from the arguments raised in the trial court, those aspects not presented to the trial court may be forfeited. *Id.* In this case, neither the plaintiffs' complaint nor their response to the motion to dismiss makes any mention of the Administrative Procedure Act serving as the basis of their claim against the Department or of subject matter jurisdiction. Paragraph 6 of the complaint, which the plaintiffs cite in opposition to the Department's forfeiture argument, alleges merely that section 15-5(d)(5) of the Cannabis Act gives the Department the discretion to adopt rules required for the administration of licensing. See 410 ILCS 705/15-5(d)(5) (West 2020). Paragraphs 90-95, also cited by the plaintiffs, likewise contain no allegation regarding the adoption of rules by the Department or its failure to do so. The mere fact that rules are mentioned generally in the complaint or in the response to the motion to

dismiss is not sufficient. It is evident that this argument was never placed before the trial court for consideration, and we therefore find it forfeited for that reason.

¶ 45     However, even if we overlook the forfeiture, we can easily conclude that the argument is meritless. As stated above, the plaintiffs' complaint does not mention the Administrative Procedure Act, and it contains no allegations concerning the Department's adoption of or failure to adopt rules. Without any factual allegations involving rulemaking that would arguably implicate a violation of the Administrative Procedure Act, that statute simply cannot be considered as the basis of the plaintiffs' claims or the basis for subject matter jurisdiction over the case.

¶ 46     The plaintiffs also make the argument that the Administrative Review Law does not apply here because there was no "administrative decision" made in this case. Their argument has two aspects. First, they point out that the Administrative Review Law specifically excludes from its definition of administrative decision "rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it." See 735 ILCS 5/3-101 (West 2020). Second, they argue that this claim does not involve an administrative decision because they had no ability to obtain an administrative hearing before the Department in which they could have raised the issues they seek to raise in this case. See 68 Ill. Admin. Code § 1291.10 (eff. Aug. 24, 2020) (applicant not entitled to hearing upon denial of license but may seek judicial review of denial).

¶ 47     We reject the argument that no final administrative decision is involved in this case which could have given rise to a claim under the Administrative Review Law. An administrative decision includes "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2020). There is no

requirement that a final administrative decision be the product of a hearing before the agency. *Key Outdoor, Inc. v. Department of Transportation*, 322 Ill. App. 3d 316, 324 (2001).

¶ 48    In this case, a final administrative decision was rendered on September 3, 2021, when the Department announced the results of the three lotteries, thereby informing the plaintiffs that their applications for licenses were not successful. Further, that announcement included multiple references that it was the final administrative decision by the Department and informed applicants that they had until October 8, 2021, to file claims for judicial review. See *Illinois Wood Energy Partners, L.P. v. County of Cook*, 281 Ill. App. 3d 841, 851 (1995) (final and binding decision by administrative agency requires that agency take some definitive action with regard to the application before it and that the applicant be informed of the action, its right to appeal the decision, and the time period for doing so). To the extent the plaintiffs argue that their claims involve only a rule, regulation, or policy rather than a decision, order, or determination by the Department, we reject such an argument as meritless.

¶ 49    Further, we find inapposite the case cited by the plaintiffs, *Board of Trustees of Addison Fire Protection District No. 1 Pension Fund v. Stamp*, 241 Ill. App. 3d 873 (1993). The question in *Stamp* was whether the method by which a pension board had determined that time spent as a volunteer firefighter was creditable for pension purposes was a "policy" that the Director of Insurance could review and reverse under the authority of then-section 22-502 of the Illinois Pension Code (Ill. Rev. Stat. 1991, ch. 108½, ¶ 22-502), as opposed to an administrative decision under the Administrative Review Law that was outside the purview of review under section 22-502. *Stamp*, 241 Ill. App. 3d at 880. The method by which the pension board had made its determination involved filing a declaratory judgment action on the question of whether volunteer time was creditable and thereafter awarding credit consistent with that declaratory judgment. *Id.*

at 881-82. The appellate court held that this process was "tantamount to an administrative decision," not a policy reviewable by the Department of Insurance. *Id.* at 882. Nothing similar occurred in this case, and we find that the holding of *Stamp* does not support the plaintiffs' argument that no administrative decision was made in the context of this case.

¶ 50    We next address the plaintiffs' argument that, even if the Administrative Review Law was an available remedy, it was not their only or exclusive remedy. They contend that, although the Cannabis Act adopts the Administrative Review Law, its plain language does not state that the Administrative Review Law is exclusive or a bar to all other actions. They point out that other sections of the Cannabis Act support the availability of other actions, such as the authorization in section 55-40(a) of a *mandamus* action to compel the Department or other state agency to perform the actions mandated under section 55-35 of the Cannabis Act, which involves the adoption of rules. See 410 ILCS 705/55-35, 55-40(a) (West 2020). They also contend that they have raised a facial constitutional challenge that they can pursue outside the context of administrative review.

¶ 51    The Cannabis Act contains two provisions addressing review of Department decisions under the Administrative Review Law. In its article specific to licensing, the Cannabis Act provides, "All final administrative decisions of the Department hereunder shall be subject to judicial review under the provisions of the Administrative Review Law, and all amendments and modifications thereof." *Id.* § 15-175(a) (West 2020). It also includes a general provision stating, "All final administrative decisions of *** the Department *** are subject to judicial review under the Administrative Review Law and the rules adopted under that Law." *Id.* § 55-55.

¶ 52    While this statutory language does not expressly state that the Administrative Review Law is the exclusive remedy available, the principle has been repeatedly recognized that where the Administrative Review Law is applicable and provides a remedy, circuit courts may not redress

parties' grievances through other types of actions. *Dubin*, 128 Ill. 2d at 498; accord *Goral*, 2020 IL 125085, ¶ 40; *Canel*, 212 Ill. 2d at 321; *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 316-17 (1996). Where a final agency decision has been rendered and the circuit court may grant the relief that a party seeks in the context of reviewing that decision, a circuit court has no authority to entertain independent actions regarding the actions of an administrative agency. *Dubin*, 128 Ill. 2d at 499. As stated above, this is an application of the exhaustion of remedies doctrine. *Poindexter*, 229 Ill. 2d at 207.

¶ 53 We have already explained that, with respect to the Department's denial of the plaintiffs' applications for licenses, a final administrative decision within the scope of the Administrative Review Law was rendered in this case. Further, it is clear that the circuit court could have granted the relief that the plaintiffs seek here in the context of an administrative review claim. The remedy that the plaintiffs seek in their complaint is a judicial determination that the results of the three lotteries are invalid because of various problems with the processes by which the Department scored applications and administered the lotteries, and that therefore those lottery results may not serve as the basis for the Department to issue dispensary licenses. This is precisely the form of remedy that the plaintiffs could have sought in an administrative review claim.

¶ 54 Moreover, all of the plaintiffs' complaints about problems with the Department's process for scoring applications and administering the lotteries, including the claims that the process was conducted contrary to law or violated constitutional rights, could have been raised in an administrative review claim. " '[T]he purpose of administrative review is "to make certain the agency has acted within its judicial bounds defined by law, to guard those statutory and constitutional rights guaranteed to one subject to administrative action, and to ascertain whether the record supports the order issued." ' " *Sierra Club v. Office of Mines & Minerals of the*

*Department of Natural Resources*, 2015 IL App (4th) 140405, ¶ 24 (quoting *Marozas v. Board of Fire & Police Commissioners of City of Burbank*, 222 Ill. App. 3d 781, 791 (1991), quoting *Edwards v. City of Quincy*, 124 Ill. App. 3d 1004, 1012 (1984)). A court in an administrative review claim has a duty to examine the procedure employed at the administrative level to ensure that a fair and impartial procedure was used. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92-93 (1992). Because of this, due process claims are inherent in an administrative review action. *Sierra Club*, 2015 IL App (4th) 140405, ¶ 24 (citing *Marozas*, 222 Ill. App. 3d at 791).

¶ 55        The fact that the plaintiffs frame their claims as constitutional challenges to the validity of the licensing process does not overcome the requirement that they exhaust their administrative remedies by presenting them in the context of an administrative review claim. A claim that a statute, although valid on its face, was applied in a discriminatory, arbitrary, or unconstitutional manner is subject to the requirement that administrative remedies be exhausted before judicial review is available. *Poindexter*, 229 Ill. 2d at 207; *Beahringer v. Page*, 204 Ill. 2d 363, 374 (2003). By contrast, where the claim is that a statute is unconstitutional on its face or where the agency's jurisdiction is attacked as unauthorized by statute, exhaustion of administrative remedies is not required. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 309 (1989).

¶ 56        The plaintiffs assert that their complaint alleges a facial constitutional challenge that is cognizable regardless of whether they have pursued an administrative review claim. A facial challenge is one that "measures the terms of the statute against the relevant constitutional doctrine and contends the infirmities found in the statute invalidate it in its entirety." *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 43. It requires a showing that the statute is unconstitutional under any set of facts, meaning that specific facts relating to the challenging party's situation are

irrelevant. *Id.* ¶ 44. By contrast, an as-applied challenge involves a contention that a statute or law is unconstitutional as it applies to the challenging party's specific situation. *Id.* The reason that the exhaustion doctrine is relaxed when a statute is challenged on its face is because such a challenge presents purely legal questions, and it is not dependent on what occurred at the administrative level in one particular case. *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004).

¶ 57    In this case, it is clear that the plaintiffs have not brought a facial constitutional challenge. Their argument on this point in their appellate brief has nothing to do with the terms of the Cannabis Act or any other rule or statute. Instead, it is entirely about how the Department applied that law in an allegedly invalid way: by failing to adopt rules and instead imposing rules through e-mails and announcements on its website. Our review of their complaint reveals the same thing. It does not allege that some inherent constitutional defect exists in the terms of the Cannabis Act, such that no circumstances exist in which it could be applied constitutionally. Instead, the claim alleged in the complaint is an as-applied challenge. The complaint is replete with allegations about how, due to various problems with the Department's process for scoring applications and conducting the lotteries, it applied the Cannabis Act in a way that violated the plaintiffs' rights to due process and equal protection. The claims it raises are entirely dependent on the facts that occurred in this specific situation involving the scoring of applications and the conducting of the lotteries. It is therefore mandatory in order to bring such an as-applied challenge that the plaintiffs exhaust their administrative remedies, which requires raising the challenge in conjunction with an administrative review claim in the circuit court. *Poindexter*, 229 Ill. 2d at 207.

¶ 58    The plaintiffs make the assertion at various points in their appellate brief that they have raised a claim that the Department acted without authority and therefore lacked jurisdiction for its actions. See *Castaneda*, 132 Ill. 2d at 309 (exhaustion doctrine inapplicable where agency's jurisdiction is

attacked as unauthorized by statute). We note that these are isolated statements, which the plaintiffs have failed to support with a citation to the complaint or with any reasoned legal argument. Also, the trial court specifically found in its order that, by the plaintiffs' own admission, they were not challenging the Department's authority to implement the licensing process, merely its processes in doing so. The plaintiffs have not taken issue in their brief with this statement by the trial court. Having reviewed the complaint, we find that it contains no challenge to the Department's authority or jurisdiction to act that would render the exhaustion doctrine inapplicable. In this context, the term "jurisdiction" refers to the authority of an administrative agency to act. *Van Dyke v. White*, 2019 IL 121452, ¶ 43 n.4. It is beyond dispute that the Department had the authority to administer the process for issuing licenses under the Cannabis Act. See 410 ILCS 705/15-5(b) (West 2020) ("It is the duty of the Department to administer and enforce the provisions of this Act relating to the licensure and oversight of dispensing organizations"). We thus reject the plaintiffs' argument.

¶ 59 In conclusion, we hold that the Department's denial of the plaintiffs' applications for licenses was a final administrative decision that was reviewable only under the Administrative Review Law. Once the plaintiffs failed to commence an action to review that denial within 35 days of that decision, it became final and the trial court lost subject matter jurisdiction to consider any further challenges by the plaintiffs under other legal theories. 735 ILCS 5/3-103 (West 2020). For this reason, the trial court's conclusion that it lacked subject matter jurisdiction over the plaintiffs' complaint for declaratory judgment was correct, and its dismissal of that complaint is affirmed.

¶ 60 The plaintiffs' final argument on appeal is that the trial court abused its discretion by failing to allow them an opportunity to amend their complaint to "plead facts tailored more to the [Administrative Procedure Act]." In response, the Department asserts that the plaintiffs never sought leave in the trial court to amend their complaint, nor did they tender a proposed amended

complaint to demonstrate how the jurisdictional defects in their initial complaint could be cured. As such, the Department argues, the trial court could not have abused its discretion by not granting a request to amend that was never made. We agree with the Department. Where the record on appeal does not demonstrate that the plaintiffs made a request to the trial court for leave to amend a complaint which it denied, this court has no basis upon which to conclude that the trial court erred. *Phillips v. DePaul University*, 2014 IL App (1st) 122817, ¶ 91; *Matanky Realty Group, Inc. v. Katris*, 367 Ill. App. 3d 839, 844 (2006).

¶ 61                                    III. CONCLUSION

¶ 62        For the reasons stated above, the judgment of the trial court dismissing the plaintiff's complaint for declaratory judgment with prejudice is affirmed.

¶ 63        Affirmed.